PIER *et al.*, *Appellants* v. HEINRICHSHOFFEN.

67 163
95a ²410

1. **Promissory Notes**: DEMAND OF PAYMENT: DILIGENCE: HOLDER NOT PREJUDICED BY MISTAKE OF POSTMASTER. The holder of a note, payable in a distant city, sent it by mail for collection to a bank in that city, in ample time to reach its destination by ordinary course of mail before maturity. When the letter, containing the note, reached the city, the bank had made an assignment, and, the address of the holder being printed on the envelope, the postmaster at once returned it with the endorsement, "bank failed." The holder, on the day of its reception, again mailed it to another agent in said city, who caused it to be presented and protested for non-payment on the day it was received, but several days after maturity; *Held*, that the holder had used due diligence in making demand of payment; that he was not required to make provision for a possible but unanticipated suspension of the bank before arrival of the letter, nor for the unauthorized interference with the same by the public officer in charge of the mails.

2. ———: NOTICE OF NON PAYMENT: NOTARY'S CERTIFICATE: PREPAYMENT OF POSTAGE: MAILS: EVIDENCE. A notary's certificate of protest, which states that he put into the proper postoffice the notice of presentment, demand, refusal and protest, is sufficient without the further statement by him that he prepaid the postage on such notice. So, the word "mailed," as applied to a letter, implies that the letter was properly prepared for transmission, and was put in the custody of the officer charged with the duty of forwarding the mail.

*Appeal from St. Louis Circuit Court.*

The case was tried before HON. JAMES K. KNIGHT, one of the judges.

*Fisher & Rowell* and *Botsford & Williams* for appellants.

Appellants were not required to show affirmatively that the postage was prepaid on the notice of protest. *Renshaw v. Triplett*, 23 Mo. 220; 1 Parsons on Notes and Bills, p. 561; *Sanderson v. Judge*, 2 H. Bl. 509; *Parker v. Gordon*, 7 East 385; *Bossard v. Levering*, 6 Wheat. 102. All that is required of the holder of a note in demanding payment thereof, is the use of reasonable diligence. It is

reasonable diligence to send the note for collection in time to reach its destination by ordinary course of mail, and before its maturity; the holder is not obliged to guard against contingencies or look out for them, and is not chargeable with faults of the postoffice department. *Windham Bank v. Norton*, 22 Conn. 213; 2 Parsons on Notes and Bills, pp. 558, 559, 443; Story Prom. Notes, Secs. 336, 337, 338, 340, 368, 259, 209; Story on Bills, Secs. 289, 290, 308, 309, 234.

*Slayback & Haeussler* for respondents.

The note was not sent to its place of demand and payment until so late that the east miscarriage or delay in the mails carried the arrival of the note there beyond the necessary day. Due diligence requires action early enough to guard against such contingency. *Gilchrist v. Donnell*, 53 Mo. 591; *Napper v. Blank*, 54 Mo. 131; 1 Parsons on Notes and Bills, pp. 355-6, 443, 465; *Schofield v. Bayard*, 3 Wend. 488. The notary, in his certificate, does not state that the letters, containing the alleged notices, were mailed prepaid, so that not even a presumptive case was made out.

HOUGH, J.—This was an action brought by the plaintiffs, as holders of a negotiable promissory note, against the defendants, as indorsers thereof. The questions presented for determination are, whether the plaintiffs used due diligence in making demand of payment, and gave the requisite notice of non-payment to the defendants. The facts are as follows: The note in question matured on the 4th day of July, 1861, and was payable at the banking house of F. & G. Willins, in the city of St. Paul, Minnesota. Some time in April, 1861, the plaintiffs delivered the same to the bank of Cooperstown, at Cooperstown, New York, for collection. At that time a letter, in due course of mail, would reach St. Paul from Cooperstown, in about six days. The cashier of the bank of Coopers-

town sent the note by mail to its regular correspondent, the Bank of St. Paul, in the city of St. Paul, for collection, in ample time, as the cashier stated, for it to reach its destination by ordinary course of mail, before the maturity of the note. When the letter reaced St. Paul, the Bank of St. Paul had made an assignment, and the envelope having printed on it the words "From the Bank of Cooperstown," the postmaster at once returned it to the Bank of Cooperstown, with the indorsement "bank failed." The letter was received by the Cooperstown Bank in the original envelope, unopened, on the 9th day of July, 1861, and on the same day the note was returned by mail to St. Paul in a letter directed to F. & G. Willins, who caused it to be presented and protested on the 15th day of July, 1861, the day on which it was received.

The defendants contend that there was a want of diligence in not sending the note in time to guard against such contingencies as the evidence dicloses, and that the action of the postmaster in the premises, is no sufficient excuse for the failure to present for payment on the day of the maturity of the note. Professor Parsons, in his treatise on Notes and Bills, says: "Ordinarily any failure to present a note at the proper time, by reason of the negligence of an agent, would discharge an indorser, but where the holder makes use of the public mail for the purpose of transmitting the note to the proper place in season to have a legal demand made, and without any negligence on his part, we should say that he would not lose his remedy on an indorser, if through any accident or disorder, or the negligence or mistake of the postoffice clerks, the note does not reach the destined place in season to make demand on the very day of maturity." Vol. 1, p. 461. In support of his text he cites the case of *Windham Bank v. Norton*, 22 Conn. 213, the leading features of which bear such a striking resemblance to the case at bar, that we think it proper to present them. The draft in that

1. PROMISSORY NOTES: demand f payment; diligence: holder not prejudiced by mistake of postmaster.

case was drawn upon and accepted by Mansfield, Hall & Stone, of Philadelphia, payable at the Farmers' and Mechanics' Bank, in said city, on the 2d day of June, 1849, and was indorsed by the defendants to the plaintiffs in the month of February, 1849. During the same month the bill was indorsed and delivered to the Ohio Life and Trust Co., a banking corporation, in the city of New York, for collection. At that time there were two mails per day from New York to Philadelphia; one leaving at 9 A. M. and one at 4 P. M., both of which were due at Philadelphia five hours after their departure. The Farmers' and Mechanics' Bank was the Philadelphia correspondent of the Ohio Life and Trust Co. On the morning of June 1st, the cashier of the Ohio Life and Trust Co. inclosed this draft with others, properly addressed to the Farmers' and Mechanics' Bank, and deposited said letter in the postoffice at the city of New York, in time for the afternoon mail, of that day for Philadelphia. This mail arrived at Philadelphia in due time, but the mail bags containing the letters for Philadelphia, were by the postoffice clerks in New York, marked to be forwarded to Washington, and were therefore carried to the latter place. The mistake was discovered at Washington, and the mail returned to Philadelphia, reaching there on the 3d of June, and on the next day, June 4th, payment was demanded and refused, protest made and notice given. In discussing the question of negligence, or reasonable diligence, the court said: " The only remaining inquiry is, whether the plaintiffs are chargeable with negligence for not forwarding the draft in question, by an earlier mail from New York to Philadelphia. It was sent by the usual, legal and proper mode. It was deposited in the postoffice in season to reach the place where it was payable, before it fell due, by the regular course of the next mail, and there was no reason to believe that it would not be there duly delivered. It was actually sent by that mail, and, but for the mistake of the postmaster where it was mailed, in misdirecting the pack-

age containing it, would have reached its proper destination, and been received there in season for its presentment when due. It in fact reached that place, when it should have done, but was carried beyond it, in consequence of that mistake. As that mistake could not have been foreseen or apprehended by the plaintiffs, it is not reasonable to require them to take any steps to guard against it. Indeed they could not have done so, as they had no control or supervision over the postmaster. They had a right to presume that the latter had done his duty. They could not know that he had misdirected the package, until it was too late to remedy the consequences. The occurrence of the draft being sent beyond its place of destination, was, therefore, so far as the plaintiffs were concerned, an unavoidable accident."

We have been referred by defendants' counsel to the case of *Schofield v. Bayard*, 3 Wend. 488, as being in direct conflict with the case just cited from Connecticut; but a careful examination of the facts in *Schofield v. Bayard* will show that there is no conflict whatever between the two cases. The latter case contains an element of negligence on the part of the holder, which was absent from the case of *Bank v. Norton*, and which is wanting in the case at bar. The facts were, that a bill drawn by a firm in New York on a house in Liverpool was accepted *supra protest*, by a house in London. The bill was sent by the holder, who resided at Birmingham, to Liverpool for payment, instead of London, where it was payable. The holder's correspondent at Liverpool returned the bill in a letter to the holder, with advice that the presentation should be made in London, and the letter was put in the post office, but by some oversight of the clerks in the post office, it did not get to Birmingham in time for the holder to forward it to London and have a regular demand made. It was held that the drawers were discharged. The court said: "This case presents no impossibility, if due diligence had been used. The plaintiff should not have sent the bill to

Liverpool at all.   It is true that after the letter containing it had been left at Liverpool, on the 10th of November, it could not have reached London in season; but it was the fault of the plaintiffs to have parted with the bill in the manner they did.   Instead of sending it to Liverpool, they should have sent it to London, and then it would have been in season, and probably would have been paid.   I am of the opinion that, by the law merchant payment should have been demanded in London on the 12th of November, and that not having been done, and there being no impossibility to prevent it but what is attributable to the want of due diligence on the part of the holders, the defendants are legally discharged, and are entitled to judgment." It will be seen that the court places its judgment expressly upon the ground that the holder was guilty of negligence in sending the bill to Liverpool, and this fault of his produced the impossibility by virtue of which he claimed to be discharged.   In the present case the letter containing the note was not misdirected; it was properly directed; it actually reached St. Paul in time, and but for its unauthorized return by the post master, the probabilities are that some agent or representative of the suspended bank would have received it in time to make due presentment, as the the testimony tends to show that the representatives of the bank continued to receive letters addressed to it, after its suspension.   The holders therefore exercised due diligence in sending the note when they did; its arrival in time demonstrates that fact; and they were not required to make provision in advance for a possible, but unanticipated suspension of the bank of St. Paul before arrival of their letter, or for an unwarrantable interference with the same by the public officer in charge of the mails, after its arrival. We are of the opinion, therefore, that under the circumstances of this case, the demand was seasonably made.

Objections are also made to the notice which was given by the notary.   The certificates of protest are as follows:

2. ———: notice of non-payment: notary's certificate: prepayment of postage: mails: evidence, " Due notices of the foregoing presentment, demand, refusal and protest were put into the post office at St. Paul, as aforesaid, and directed as follows: Notice for Katharina Ambs, directed St. Louis, Mo.: Notice for W. and R. Heinrichshoffen, directed St. Louis, Mo." And the notary testified, "I personally mailed such notices in the postoffice on the 15th day of July, A. D. 1861." The objection is that he did not say that he had prepaid the postage; and the court instructed the jury that this was necessary. This objection is rather hypercritical. The word mailed, as applied to a letter, means that the letter was properly prepared for transmission by the servants of the postal department, and that it was put in the custody of the officer charged with the duty of forwarding the mail. Indeed the words "put into the postoffice," as used by the notary, have a technical significance which is well defined; and they are commonly employed to designate the duty of the holder in giving notice. Since the enactment of the laws requiring all mail matter to be prepaid, these words have been used by this court in the sense of mailed. *Renshaw v. Triplett*, 23 Mo. 220; *Sanderson v. Reinstadler* 31 Mo. 485. In Story on Pomissory Notes, § 328, (Ed. 1859,) it is said, " all that the law requires of the holder is due dilligence to send the notice within the proper time; and he has done his whole duty, when he puts it into the proper postoffice in due season, and it is properly directed. The holder has no control over the acts, or operations, or conduct of the officers of the postoffice, and is not responsible for the accident or neglect which may prevent a due delivery of the notice to the party entitled to notice." It sufficiently appears in the present case that the notice was properly directed. The evident and only meaning of the rotary's certificate is that the notice was mailed to the defendants at St. Louis, Mo. The judgment will be reversed and the cause remanded. All concur.

REVERSED.