## A. ANNA WARD, Respondent, v. D. A. MORR TRANSFER & STORAGE COMPANY, Appellant.

### Kansas City Court of Appeals, June 4, 1906.

1. **NOTICE: Letters: Mailing: Presumption.** It is presumed that a letter duly mailed is received but the foundation for such presumption rests upon the evidence that the letter was duly addressed, stamped, and deposited in the postoffice, which is implied in the expression "mailed;" and hence the evidence that the plaintiff sent her address to the defendant will not raise the presumption of having duly mailed a letter.

2. ————: ————: ————: **Warehouses: Evidence.** The plaintiff stored her goods with defendant, promising to keep him informed of her address. In an action for conversion of the goods sold for storage, she testified that she mailed him letters from a certain place requesting certain fruit to be sent to her mother. Held, that was no notice of where her proper address was or would be and not a compliance with her agreement.

3. **WAREHOUSES: Notice: Statute: Construction.** The expression "if his address is known" in the Warehouse statute means if known or could be ascertained by reasonable inquiry and the warehouseman can take no advantage of his lack of knowledge of the address if the means of knowledge or information thereof can be readily obtained.

4. ————: **Sale for Storage: Quantity Sold: Duty of Warehouseman.** Where property to be sold for storage consists of a large number of articles which may be sold separately and some part less than all can be sold for enough to pay charges and costs, the warehouseman should sell no more than is reasonably necessary to accomplish that purpose; otherwise he may be guilty of conversion either of the excess sold or all sold as the case may be; and he should also afford reasonable opportunity for the examination of the property to be sold.

5. ————: ————: **Conversion: Demand.** In an action against a warehouseman for conversion of stored goods which are sold for storage, there is a conversion if the sale is illegal and no demand by the plaintiff need be alleged or proven since the demand is evidential and not creative.

6. ————: ————: **Ownership: Notice: Instruction.** Certain instruction relating to notice and the ownership of the goods sold is criticised as being confusing and including hypotheses not in dispute.

7. ———: ———: Goods Converted: Evidence: Memoranda. In an action for the conversion of goods sold for storage, the plaintiff was permitted to use a typewritten list made from memoranda which she from time to time had jotted down as the different articles occurred to her memory; and on objection to the typewritten list she was permitted to refer to the original slips. Held, she could use either the typewritten list or the original slips since they reminded her of the things about which she was testifying; such memoranda is not the evidence but the memory of the witness which their use brought into exercise, is evidence. Authorities considered.     :

Appeal from Jackson Circuit Court.—*Hon. Hermann Brumback*, Judge.

REVERSED AND REMANDED.

*Holmes & Page* and *Garland M. Jones* for appellant.

(1)  This is an. action for conversion, pure and simple, upon the sole ground that plaintiff was not given personal notice, and the peremptory instruction should have been given.  Bank v. Brunswig, 107 Mo. App. 405; Dugitt v. Davis, 53 Mich. 35; Maguire v. Dinsmore, 70 N. Y. 410.  (2)  In this connection we desire to call the court's attention to the fact that it was error on the part of the trial court to have submitted to the jury the question as to whether or not defendant knew plaintiff's address.  There is no evidence in the record upon which this presumption could be based.  (3)  The trial court erred in allowing plaintiff to use her various lists as memoranda or the petition as memoranda in said cause of action.  Underhill on Evidence, sec. 338; Williams v. Wager, 64 Vt. 326; Commonwealth v. Clancey, 154 Mass. 128; Converse v. Hobbs, 64 N. H. 42; Byrns v. Express Co. (Tex.), 15 S. W. 46; Greenleaf on Evidence, sec. 438; Allison on Practice, 540.  (4)  The court erred in giving the instructions of its own motion, which failed to properly present to the jury the issues in this case, which tended to confuse the mind of the jury and

which failed to properly submit to the jury the issues as made up by the pleadings.

W. R. *Thurmond* and A. O. *Harrison* for respondent.

(1)  Instead of mailing notices to her address in Stearns, Kentucky, where they had last written to her, within three months, and where she still resided, defendant sent a notice to the address of an Anna Ward (not A. Anna Ward), which they found in the Kansas City directory and another letter addressed "City." There was ample evidence to sustain the finding of the jury that the defendant knew plaintiff's address. Was the sale of the goods in bulk and with nearly all of the articles hidden from view, a legal sale? Garth v. Caldwell, 72 Mo. 622.  (3)  A witness who has drawn up a written narrative, or made a written memorandum of a matter or transaction, may in many cases use it while under examination, as a script to refresh his memory. Best on Evidence (Morgan's Ed.), sec. 224; 1 Wigmore on Evidence, sec. 735, pp. 829, 830; s. c., sec. 758, pp. 849, 850; Dunlop v. Berry, 5 Ill. 327.  (4)  The instructions given by the court of its own motion correctly declared the law, fully covered the case and included everything in the instructions asked by defendant to which it was entitled. Jesurun v. Kent, 45 Minn. 222, 47 N. W. 784; Stewart v. Naud, 125 Cal. 596.

ELLISON, J.—The defendant is a general storage and warehouse company in Kansas City, Missouri, and the plaintiff, then residing at that place, on March 11, 1903, stored with it a lot of household goods which she charged it with converting and brought this action for conversion. She prevailed in the trial court by a judgment for $434.75.

The defendant sold the goods at public auction and claims the statute (sec. 10571, Revised Statutes 1899)

as authority therefor. It reads as follows: "If the owner of any goods, merchandise or other property shall store the same in any warehouse created by this chapter, and shall not pay the storage charges upon the same within a period of sixty days after said charges have become due, it shall be lawful for the warehouseman to sell such goods, merchandise or other property, or so much thereof as will pay all storage and other charges, at auction to the highest bidder, first having given either twenty days' notice by advertisement in a daily paper, or four weeks' notice by advertisement in a weekly paper, of the time and place of sale, and having further given notice to the owner by mailing him, at least twenty days before the day of sale, if his address is known, a notice of the time and place of sale . . ." It was shown that twenty days' notice of sale was published in a daily paper, but defendant admitted that it did not give the other notice required by mailing it to plaintiff. The reason assigned for not giving such notice was that it did not know plaintiff's address. Whether defendant knew her address is made one of the principal points in the case. It was submitted to the jury as an issue in an instruction. Defendant insists that there was no evidence showing that her address was known and consequently nothing upon which to justify the instruction.

It is necessary to know the following, to understand the relation between the parties. The storage to be paid was $1.25 per month. But as plaintiff was not going to remain in the city, intending to travel about from place to place and did not wish to be annoyed by remembering and remitting such small sums, it was arranged that when defendant had carried her as long as it was willing it was to notify her of the amount, she to keep the company informed as to her address. She said to defendant's agent, "Whenever I get to any place or change my address, I will send you immediately my new address, and whenever you feel you must have your money, you will let me know when you want it."

Whether plaintiff notified defendant of her different addresses bears upon the question whether it should have given her notice by mail of the sale. She went to St. Louis where she remained four months and then returned to Kansas City. She then went to Denver and remained until September, 1903. She went from there to Stearns, Kentucky, where she remained until the following June after the goods were sold by defendant. She testified on the matter of notifying defendant of her address from St. Louis, etc.; but as she was at Stearns, Kentucky, for several months prior to the time of sale of her goods, we will pass to the evidence relating to that place. She stated that upon arriving at Stearns in September, "I sent them my address stating where I was." She stated that "the following February I wrote them (defendant) saying I wanted them to let my mother have my fruit." This letter she stated she mailed, and that she got an answer (which she destroyed) refusing to give up the fruit without her receipt so as to make indorsement thereon. She wrote again and defendant again answered by refusing. These letters were not produced, defendant saying they did not get any such letters and plaintiff saying that she had destroyed those she received.

Afterwards she went from Stearns to St. Louis and on June 22, 1904, she wrote to defendant saying that she had never received a bill on storage and to send her one. To this she received an immediate answer, dated June 23d. This letter plaintiff produced and it read as follows: "Your letter of the 22d inst. has been received, and in reply beg to report that your goods were sold May 20, 1904, for storage charges and cost of advertising, and did not sell for enough to cover same.

"These goods were put in here April, 1903, and we not only never received any payment on storage, but we could not find you or get any response to bills or letters. Prior to selling the goods we sent you a notice addressed "City" and another to "1731 Main st.," and

both were returned.  We also advertised the goods as required by law.

"We regret that such a course was necessary but we were compelled to protect ourselves."

Defendant denies ever receiving any but the last letter, which they immediately answered as just set forth.

It will be observed that the evidence of notice to defendant of plaintiff's address is not direct or positive evidence, it is rather made to depend upon a presumption that in regular course, letters are received by addressees.  In order to lay a foundation for such presumption, it should be shown that the letter was duly addressed, stamped and deposited in the post office or the place for receipt of letters.  That, however, is made to appear sufficiently by evidence that it was "mailed" to the addressee.  That a letter to be properly "mailed" to a person must be addressed, stamped and deposited in a proper place for the receipt of mail, and therefore the general statement that a letter was mailed will be sufficient.  [Pier v. Heinrichshoffen, 67 Mo. 163; Bank v. Pezoldt, 95 Mo. App. 404.]  But while this is allowable, the evidence raising a presumption of receipt by the addressee ought not to be itself nothing more than a presumption.  Thus, we held in Goucher v. Carthage Novelty Co., 91 S. W. 447, that evidence that a letter properly stamped, addressed and deposited on a table in a lawyer's office, where the letters of the office were put, it being the duty and custom of the lawyer to mail them, was not sufficient, in absence of evidence that he did mail it.  The plaintiff testified that she "sent" defendant her address.  Was this by messenger conveying words or carrying a written communication, or was it by a letter duly mailed?  We think it would be unsafe to depart so far as would be necessary to uphold the sufficiency of such evidence.

It is true that plaintiff testified that she "mailed" her letters written in February.  But that was a mere order for fruit to be delivered to her mother.  It did not

purport to be a notice of where her proper address was then, or would be. Remembering that she had told defendant that she would be going from place to place, and that she was travelling about, such a letter was not the notification of address agreed upon. We think the proof of knowledge of plaintiff's address was not sufficiently made and that issue should not have been submitted to the jury. But as the face of the case shows it to be an omission which may probably be cured, justice requires that the case be remanded, instead of being reversed outright.

We will also add to what is already written that in respect to the notice required by the foregoing statute, we are of the opinion that the expression, "if his address is known," means, if known, or could be ascertained by reasonable inquiry. We do not believe the statute meant that the warehouseman could take advantage of his lack of actual knowledge of the address if the means of knowledge were at hand, or information of it could readily be obtained. It therefore might be that evidence of plaintiff's having mailed defendant a letter from Stearns, Kentucky, in February, 1904, in regard to delivering some fruit to her mother, which defendant answered, would, if properly connected with other circumstances, have a tendency to show that defendant could easily have ascertained her address in May when they advertised the goods.

Under the statute aforesaid, we believe that where the property to be sold consists of a large number of separate articles, which may be sold separately, and where some part, materially less than all, can clearly be sold for enough to pay all charges and costs, it is the duty of the warehouseman to sell no more than is reasonably necessary to accomplish that purpose. That if he willfully puts up and sells more than is reasonably necessary, in the situation which confronts him at the sale, he is guilty of conversion of all thus sold. If he unnecessarily sells all of a large amount of valuable and

separable property, when clearly less than all would have brought his claim if it had been offered, he is guilty of a conversion of all. It is his duty to use the business caution, judgment and discretion common to prudent business men in like situation, and to endeavor to so conduct the sale as not to unnecessarily sacrifice property and oppress his defaulting patron. To this end he should afford reasonable opportunity to prospective purchasers to examine the property that they might become reasonably advised as to what they were bidding upon; and the warehouseman himself of what he is selling. In this case it is claimed by plaintiff, that her goods, to the value of several hundred dollars, were sold in bulk without means of examination, for less than twenty dollars.

As the case is to be retried, it is necessary to pass upon some other points suggested by the respective counsel. Some errors against the plaintiff appear in the instructions. The case shows a conversion unless there was a legal sale. If the sale was illegal and the property sold and passed to others by defendant's act, there was a conversion and the burden of showing a demand need not be assumed by plaintiff and need not have been alleged by her. A demand is evidential, not creative. [Bank v. Metcalf, 40 Mo. App. 494; Sewing Machine Co. v. Betting, 46 Mo. App. 417; McLachlin v. Barker, 64 Mo. App. 511.] The relation of the parties may be such as to require a demand to bring out the conversion —before the conversion can be made to appear, but that is not in this case. [Wimberly v. Pitner, 66 Mo. App. 633.]

Instructions four and five are somewhat involved in statement, making them liable to confuse the jury. They likewise include hypotheses of matters not in dispute. Such as whether defendant mailed a notice to plaintiff, and whether plaintiff was the owner of the goods, etc. The case, as made, concedes that no notice of sale was mailed to plaintiff and that she was the owner of the goods.

There were a number of objections to evidence made by the defendant during the trial. Many of those of minor importance will probably not arise on retrial. There was one much insisted upon, which arose in different forms. It involved the right of the plaintiff to refer to a list of the articles which she claimed were stored with defendant. Her receipt from defendant named among other things, boxes, barrels and tubs. These were filled with a great variety of articles of household goods and kitchenware. The list was not made at the time she packed them, nor at the time she delivered them to defendant. It was made on separate pieces of paper at different times when the article or articles would come into her memory as being a part of the goods stored. She said, "Just as I would remember things I would jot them down." Before the trial she arranged these various memoranda, thus made, in an orderly way and had them copied into one list on a typewriter. It made a list of two or three pages of printed matter. It was from the list thus made she purposed using, not as evidence to be read to the jury, but to look at in the course of her testimony in order to bring different articles to her memory. On objection to the typewritten list, she was permitted by the court to use the original slips made by her. These were also objected to. We think it was proper for her to use either the typewritten list or the slips, for that purpose. Either reminded her of things to which and about which, she testified, just as anything else may bring to the mind of an individual a fact, distinctly remembered as a fact, when once the mind was brought to bear upon it. The memoranda, in such case, is not evidence, but the memory of the witness is. It is unlike those cases where, though a witness sees his signature, or a memoranda, yet has no present recollection of the matter. It is a case of testimony from knowledge and present memory and it is of no consequence, so far as being admissible is concerned, what circumstance or train of circumstances, brought about a

recollection. Every one knows what trivial incidents will cause immediate consciousness of matters of which one was temporarily unconscious. It is the right of the opposite party to cross-examine as to how a witness comes to remember anything to which he has testified. But we can see no reason for refusing or discrediting testimony enumerating a long list of articles, on the ground that the witness is enabled to remember the existence of the articles by seeing them named on a memoranda. This rule is stated in 1 Wigmore's Ev., sec. 735, pages 829, 830. The author shows that there would be a failure of justice without such rule; and cites authority to sustain it. He quotes from Davis v. Field, 56 Vt. 426, as follows: "Nor was it necessary that the witness should have had an independent recollection. . . . The old notion that the witness must be able to swear from memory is pretty much exploded. All that is required is that he be able to swear that the memorandum is correct. There seems to be two classes of cases on this subject: 1. Where the witness by referring to the memorandum has his memory quickened and refreshed thereby, so that he is enabled to swear to an actual recollection; 2. Where the witness after referring to the memorandum undertakes to swear to the fact, yet not because he remembers it, but because of his confidence in the correctness of his memorandum. In both cases the oath of the witness is the primary, substantive evidence relied upon; in the former the oath being grounded on actual recollection, and in the latter on the faith reposed in the verity of the memorandum." And also from Bank v. Zorn, 14 S. C. 444, as follows: "The rule upon this subject, in its broadest outline, embraces two classes of cases; first, where the witness, after referring to the paper, speaks from his own memory and depends upon his own recollection as to the facts testified to; second, where he relies upon the paper and testifies only because he finds the facts contained therein." If the testimony is from the memory of the witness "any writing whatever

is eligible for use. . . . Common experience tells every man that a very sight circumstance, and one not in point to the existing inquiry, will sometimes revive the history of a transaction made up of many circumstances. Why then, if a man may refresh his memory by such means out of court, should he be precluded from doing so when he is under examination in court." [1 Wigmore on Evidence, sec. 758, p. 850.] At page 851, that author quotes the following as said by L. C. J. ELLENBOROUGH in Henry v. Lee, 2 Chitty 124: "If upon looking at any document he (the witness) can so far refresh his memory as to recollect a circumstance, it is sufficient; and it makes no difference that the memorandum is not written by himself, for it is not the memorandum that is the evidence, but the recollection of the witness."

The judgment will be reversed and the cause remanded. All concur.