W. M. COLLINS, et al., a Co-partnership, Under the Firm Name of COLLINS & COLLINS, Respondents, v. THOMAS J. HOOVER, Appellant.

Springfield Court of Appeals, February 28, 1920.

1. **EVIDENCE: Testimony that Letter Accepting Offer was Placed. where by Custom it Would be Mailed Does not Raise Presumption of Receipt.** Testimony that a letter accepting an offer to list property for sale was placed on a desk where in the regular custom of the conduct of the business it would have been malied, is not sufficient proof of mailing to raise the presumption that the letter was received by the addressee.

2. ———: **Copy of·Letter is Inadmissible against Addressee without Proof that the Original was Properly Addressed and Mailed.** Testimony that the writer of a letter accepting an offer to list land for sale could not remember addressing the envelope, but believed that he properly directed it and that he had placed it where by custom it would have been mailed, is insufficient to authorize admission of a copy of the letter in evidence against addressee.

3. **APPEAL AND ERROR: Where Failure of Proof cannot be Cured, New Trial Will not be Granted.** Where the plaintiff who wrote a letter accepting defendant's offer testified fully as to his recollection concerning the letter, but such testimony was insufficient to authorize its admission in evidence, a new trial will not be granted in reversing a judgment for plaintiff.

Appeal from Circuit Court of Pemiscot County.—*Hon. Sterling H. McCarty,* Judge.

REVERSED.

*Ward & Reeves* for appellant.

(1) The plaintiff never at any time produced a purchaser ready, willing, and able to buy the land upon the

terms and conditions authorized by the defendant, as above pointed out, and the trial court should therefore have instructed the jury to return a verdict for the defendant. Harwood v. Triplett, 34 Mo. App. 273; Young v. Ruhwedel, 119 Mo. App. 231; McCormick v. Obanion, 168 Mo. 614; Gelatt v. Ridge, 117 Mo. 553. (2) "A presumption must be based upon a fact and not upon inference or upon another presumption." Hays v. Hogan, 273 Mo. 25; Yarnell v. Railroad, 113 Mo. 570; State v. Lacland, 136 Mo. 26; Bigelow v. Metropolitan St. Ry., 48 Mo. App. 367; Glick v. Railroad, 57 Mo. App. 97.

BRADLEY, J.—This is a suit to recover a commission alleged to be due plaintiffs for finding a purchaser able, ready and willing to buy defendant's land. The cause was tried to a jury, and plaintiffs obtained a judgment for $500 and defendant appealed.

Plaintiffs allege that on or about January 31, 1918, defendant listed with and authorized them to sell his farm in Pemiscot county for the price and sum of $85 per acre net to him, the purchaser to assume a certain mortgage, and pay balance in cash. That on or about May 2, 1918, plaintiffs sold said land to one Rhein who was able, ready and willing to buy at $95 per acre leaving to plaintiffs a commission of $1339.25. That defendant refused to convey to Rhein, and refused to pay plaintiffs their commission for which they ask judgment. The answer is rather lengthy, and it is sufficient to say that defendant denied that plaintiffs had any authority to sell his land.

Whatever the relation between the parties hereto, it arose from correspondence. On January 22, 1918, defendant wrote plaintiffs as follows:

"Springfield, Illinois,
January 22nd, 1918.

Friend Collins: As I have not heard from you for some time, thought I would drop you a line and inquire whether or not there is much land changing hands at the present time. As I have a proposition, which I would like to take up. I would like to sell my

farm down there, which I purchased of you. I mean business, and wish you would get busy and see what the best offer you can get for it. Land in this locality has been selling fine this season, but at the present time there is very little for sale at any price. I have not placed this in anyone's hands, and have made no effort to sell it myself, and would be pleased to hear from you at your earliest convenience."

To this letter plaintiffs on January 26th replied:

"Mr. T. J. Hoover, Springfield, Ill., Dear Mr. Hoover: We have your letter and note that you want to sell your farm in this county. We will be glad to undertake the sale of it if you price it so we think it will move. We have been selling quite a lot of land this past fall and have some good prospects for future sales. The road by your place has never been graded so as to furnish any drainage for your land and the crops along the road did not show up very good, but if you want to sell with the view of undertaking something else you should know about how to price this land to make it move quickly. We believe we can sell it at a quick sale so as to make it net you $80 an acre, and if the land should sell now the purchaser will pay this year's taxes and get this years' rent, but if it should sell after the first of June then you will receive this year's rent and pay this year's taxes. Purchaser will assume the loan on the land and pay you balance in cash. Write us if this proposition will suit you and if not write us just what you want us to do in regard to the sale, setting forth all the terms and conditions you will accept."

To this last mentioned letter defendant replied:

"Springfield, Illinois,
January 31st, 1918.

Friend Collins: Yours of the 26th received, and in answer I will say that land here is selling as high as $250 an acre that does not produce any more than mine, and it looks like mine would be a bargain at $100 per acre, for a quick sale I am willing to make a sacrifice, and will take $85 an acre net to me, purchaser to re-

ceive rents for 1918 and pay taxes for 1918, and to assume the loan on the land and pay me balance in cash. Please let me hear from you at once, will tie up the other proposition as soon as I am sure this place is under contract to be sold."

The next communication that defendant acknowledges receiving was a telegram from plaintiffs dated at Caruthersville on May 1st, advising that the farm was conditionally sold. To this telegram defendant immediately replied by letter as follows:

"Springfield, Illinois,
May 2, 1918.

Friend Collins: Your telegram just received and in answer will say, if you will refer to my letter of January 31, 1918, you will see that I made you the offer of $85 per acre for quick sale, and in the last paragraph I asked you to let me hear from you at your earliest convenience, so I could tie up the other proposition as soon as I was sure that my place was under contract to be sold. (See copy of letter enclosed.) Not hearing from you for about three months. I supposed you did not care to accept my proposition, so a short time ago I contracted it to a party in this city, and received payment on it. Sorry you did not see fit to answer my letter, so as to take advantage of my proposition."

Before defendant's letter last mentioned reached Caruthersville plaintiff Collins left for Springfield, Ill. and on May 3rd called on defendant and presented for his signature the contract made with Rhein, and also a warranty deed for execution. Defendant refused to sign or recognize the contract plaintiff made with Rhein for the sale of the land because, among other things, he claimed that he had no answer to his letter of January 31st, and that plaintiffs, therefore, had no contract with him, and no authority to sell his land. And not having heard from plaintiffs in reply to his letter of January 31, he, himself, had sold the land on April 22nd. Plaintiffs claimed that they answered defendant's letter of

January 31st. If they did not reply to this letter and accept the employment as therein provided then there was no contract, and plaintiffs cannot recover. We might say here in passing that plaintiffs have not briefed their cause here. A respondent is not required to brief his cause here, but we do not commend the practice of a party resting on his oars after he has successfully passed the trial court. It is common knowledge that in the stress of trial the trial court · however learned, must of necessity, pass upon questions "right off the bat," a common and well understood expression, and a litigant who is the beneficiary of the trial court's judgment should be as diligent to sustain that judgment as he was to obtain it.

Defendant makes many assignments of error, but in our opinion one is decisive, and it is not necessary to discuss and determine others. The correctness of the admission in evidence of the copy of the letter is the assignment we think decisive. Defendant's contention that plaintiffs had no contract of any character to sell his lands depends upon the proper mailing of the letter which plaintiffs claim they wrote to defendant on February 3rd, in answer to defendant's letter of January 31st. Plaintiffs, over defendant's objection and exception, succeeded in getting into the record and before the jury a copy of the disputed letter, which is as follows: "Feb. 3, 1918. Mr. T. J. Hoover, Springfield, Ill., Yours of the thirty-first received and contents noted. The price is high enough, but if the spring opens up good we think we can sell it for you at the price of $85 per acre net to you. Trusting this will find you all O. K., we remain, Yours truly."

Defendant denied receiving this letter, and there is no circumstances tending to show that he did receive it. If plaintiffs wrote the letter, properly addressed stamped and mailed it, then the presumption would be that defendant received it. Plaintiffs had to prove that they accepted defendant's offer to permit them to sell his farm, and they undertook to make this proof

205 App.—7

by showing that they had accepted by letter, and to do this in the absence of proof that defendant received the letter plaintiffs were required to prove that the letter was written and properly mailed. Plaintiffs perhaps have shown every thing necessary to make the copy admissible except the mailing, and in this particular we are of the opinion that they have failed to meet the requirements. Of this disputed letter plaintiff Collins testified: "I wrote that letter and put a two cent stamp on the letter and mailed it in the regular routine of business. Of course I mailed it when I mailed all my mail. As to that particular letter I do not remember exactly. Q .You put it in the mail box in the due course of your business. A. In the routine of business I suppose I mailed that letter. What I know about the letter is I write letters and lay them on my desk and stamp them and mail them with my other mail as I do every day. Q. Mr. Collins will you tell the jury whether or not it is your custom to promptly mail all letters that you write pertaining to the sale of real estate? A. Yes, sir, it is our custom, but I can't swear to any one of these particular letters, I don't remember addressing an envelope for this particular letter, but I believe I addressed it at his proper address in Springfield. I remember writing it, but I wouldn't swear to the jury that I mailed this identical letter, because I don't remember only in a general routine of business; but as it was my general custom I think I mailed it."

In Hardin Grain Co. v. Ry. Co., 120 Mo. App. 203, 96 S. W. 681, defendant objected to the admission in evidence of the impression copies of two letters which plaintiff claimed to have written and mailed. Plaintiff served notice to produce the originals, as did plaintiffs in the case at bar. In that case the court said: "In order to lay the foundation for the introduction of the secondary evidence offered, it devolved on plaintiffs to show that the letters had been delivered to the defendant. This they attempted to do by the testimony of one of the plaintiffs, who testified that he dictated the letters

to his stenographer, and, after they were written, read
and signed them, he returned them to the stenographer,
whose duty is was to prepare them for mailing, and
then deposit them in the mail chute connected with a
post box maintained in the building. Witness could not
say from personal knowledge whether or not the
stenographer had prepared these particular letters for
mailing or deposited them in the chute, but stated that
it was her custom to follow this course with all of the
letters dictated by him. Had plaintiffs been able to
produce the stenographer and had she testified, al-
though she had no recollection of the particulars, she
invariably prepared and mailed in the chute all letters
received by her for mailing the evidence would have
been sufficient, but as it now stands in the record, the
evidence leaves the letters in the hands of the stenogra-
pher. Evidence of the general course of business fol-
lowed in plaintiff's office cannot supply the missing link
in the necessary evidentiary chain.'' [Citing Goucher
v. Carthage Novelty Co., 116 Mo. App. 99, 91 S. W. 447;
Ward v. Transfer Co., 119 Mo. App. 83, 95 S. W. 964;
Pier v. Heinrichshoffen, 67 Mo. 163; Bank v. Pezoldt,
95 Mo. App. 404, 69 S. W. 51; Hetherington v. Kemp,
4 Camp. 193.] In Goucher v. Novelty Co., supra, where
the mailing of notice of dishonor of a note was in ques-
tion it was held that evidence that the notice was put in
an envelope, etc., and placed with the outgoing mail
which was every day taken to the post office was insuffi-
cient. In this case the court quotes with approval from
Hetherington v. Kemp, supra, an English case, as fol-
lows: ''Some evidence must be given that the letter
was taken from the table in the counting house and put
into the post office. Had you called the porter and he
had said that, although he had no recollection of the
letter in question, he invariably carried to the post office
all the letters found upon the table, this might have
done. But I cannot hold this general evidence of the
course of business in the plaintiff's counting house to
be sufficient.''

In Ward v. Transfer Co., 119 Mo. App. 83, 95 S. W. 964, the Kansas City Court of Appeals referring to the Goucher case says: "Thus, we held that evidence that a letter properly stamped, addressed and deposited on a table in a lawyer's office, where the letters of the office are put, it being the duty and custom of the lawyers to mail them, was not sufficient, in absence of evidence that he did mail it." We do not find any authority in this State to support the competency of the admission of a copy of a letter by proving that the original was written, put in an envelope, properly addressed and stamped and that it was the general custom to mail all letters. The word "custom" implies only that such letters are generally and usually mailed. It also implies that some may not be mailed, and hence the rule as it appears to be in our State that there must be some evidence more than mere custom that the letter was mailed, other requisites being proven, in order to make competent a copy. This is not a technicality, but a sound, sensible rule, because a party should not be permitted by proving a general custom in his office to cast the burden upon his adversary of overcoming a presumption of fact which he establishes by mere proof of the routine in his office. When the question as to whether a letter was mailed arises as in the case at bar it is usually of great importance to the parties, and it saps of equal justice to require more than mere custom in the office where such letter is written to establish the presumption of the receipt by the addressee. The most that can be deduced from plaintiff's evidence as to the mailing of the letter, a copy of which they sought to use, is that they knew they mailed it because it was their custom to mail all letters. It also will be noted that Mr. Collins says that he does not remember addressing an envelope for this particular letter but *believes* that he properly directed the letter to defendant's address in Springfield, Illinois. Unless the letter was properly addressed, there would be no presumption of its receipt by the addressee. [Best v. Insurance Co., 68 Mo. App. 598.] When plaintiff Collins was in Springfield, Illinois, on

May 3rd to see defendant, and when he presented the contract with Rhein and the warranty deed, defendant asked him why he had not answered his letter of January 31st, and of this conversation plaintiff Collins says: "I didn't need to tell him I had answered it. It was up there trying to close the deal with him and he didn't talk very favorable to me. He said he had made a contract with another party and wanted to know why I didn't answer his letter, and I told him I thought I had answered it, for he would have known as much as I did then, and besides I didn't believe in letting him know everything right then."

We can see no room for holding that the failure to make the proper proof, or lay the proper foundation for the admission of the copy might be cured at another trial as was the case in Ward v. Transfer Co., supra. Plaintiff Collins said all that he could say if he had no knowledge of the mailing of the letter except the inference he drew from the custom in his office.

It follows from the above and foregoing that the judgment below should be reversed, and it is so ordered. *Farrington, J.,* concurs. *Sturgis, P. J.,* concurs in result.

STURGIS, P. J.—I concur in the result for the reason that plaintiffs failed to prove that the proposed purchaser was ready, able and willing to buy the land, subject to the mortgage thereon, at an immediate cash sale, his only proposition being to put up earnest money to be forfeted in case the sale was not fully consummated at a later date.