ARMOUR & COMPANY, a Corporation, v. AMERICAN AUTOMOBILE IN-
SURANCE COMPANY, a Corporation, Appellant.—80 S. W. (2d)
685.

Division Two, March 5, 1935.

*Bryan, Williams, Cave & McPheeters* for appellant.

552

*Leahy, Saunders & Walther* and *Lyon Anderson* for respondent.

COOLEY, C.—Suit to recover on an automobile liability insurance policy issued by defendant to plaintiff. Verdict and judgment for plaintiff for $9,835.40 from which defendant appealed. The policy insured plaintiff against loss or expense arising from claims for damages growing out of the use of automobiles by plaintiff's employees in its business, and required the defendant to investigate all accidents covered by the policy, to defend suits brought against plaintiff on claims for damages for bodily injuries on account of such accidents, and to pay, within the policy limits, any judgment obtained against plaintiff, with costs, etc. There is no dispute as to the amount of the judgment if plaintiff is entitled to recover at all.

The policy contained the following provisions: ''This policy is issued by the Company subject to the following conditions, limitations and agreements which are a part of the policy, and to which assured, by the acceptance of this policy agrees:

''3. Upon the occurrence of any loss or accident covered hereunder, the assured shall give immediate written notice to the company at its home office in St. Louis, Mo., or to its authorized agent, with the fullest information obtainable at the time. *If a claim is made on account of such accident, the assured shall give like notice thereof immediately after such claim is made,* with full particulars. If thereafter any suit is brought against the assured to enforce such claim, the assured shall immediately forward to the company every summons or other process as soon as the same shall have been served. . . .

''Please note condition requiring immediate notice. . . . Mail notice immediately.

''Home Office, Pierce Building,
''St. Louis, Mo.'' (Italics ours.)

The controversy in this case arises from defendant's contention that the plaintiff failed to comply with the provision which we have italicized.

On February 4, 1919, while the policy was in force, Bruce Smith, a minor, residing with his parents at Steubenville, Ohio, was injured by an automobile driven by one of plaintiff's employees. The accident was within the coverage of the policy. Immediate notice of the accident was given to the insurer and it made a full investigation. About the time the investigation was completed the father of the injured boy, apparently thinking the boy had been as much at fault as the automobile driver, stated to the investigator that ''they'' did not intend to make any claim for damages or compensation. Both the insurer and the insured then closed their files of the case. Nothing further occurred in connection with the matter until December 13, 1924. On that day the parents of Bruce Smith called upon Harry A. McGinnis, local manager of the Steubenville branch of

Armour & Company, and told him that the boy had developed a brain condition causing convulsions and that their doctor had advised an operation; that they estimated the expense would be about $1,000; that they could only raise $500, and they wanted to know if he thought Armour & Company would help defray the expense. Mr. McGinnis was not in the employ of Armour & Company at the time of this trial. He was called as a witness by defendant, and testified: "When the Smiths came to my office in December, 1924, Smith stated that the boy had been hurt, but at the time they didn't think much of it. I would not say that he was then claiming that Armour & Company were at fault at all. He impressed me as seeking a little aid in a friendly way without having to resort to legal action to get it. You can call it charity if you want to; he was seeking assistance. He didn't threaten to go to any lawyer and file a suit at that time. He said they didn't have the $1,000 to put up for the operation. I told them I would write to the Casualty Department to see what their attitude was. Smith did not make any mention of a specific amount. The amount of a thousand dollars was mentioned as being the estimated expense in connection with the operation. . . .

"The Smiths did not demand the thousand dollars. All they wanted was an expression, an opinion from me, as to whether Armour & Company would contribute to defray the medical expenses incident to the boy's treatment. They did not state at that time that they had consulted a lawyer. They did not state that they had investigated the facts and found that Armour & Company were liable legally for this boy's injuries."

He said he wrote Armour & Company's Chicago office reporting the interview with Mr. and Mrs. Smith; that according to his recollection the only communication he received from that office was "that the case would be one for the insurance company to handle."

Relative to said interview between the Smiths and McGinnis, Harry Smith, father of Bruce, testified that about 1923 the boy began having epileptic spells and convulsive seizures and that he and his wife were advised to have the boy operated on, which would cost about $1,000; that they only had $500 and "we decided we would go to Armour's and see if they would pay the balance of the thousand dollars." We told him (McGinnis) that we had so much money and needed so much more, and we felt that if they would help us we would call everything square. He said he would take it up with the Chicago office. I told him that we needed $500. I told him that if Armour & Company would pay the $500 no suit would be brought against the company." Mrs. Smith's testimony was of like tenor. She said: "I told him what the doctors had told us and we didn't want to bring suit, but they were nice to us at the

time of the accident and we thought now they might help us; that we would release them if we would get the help."

Armour & Company did not at the time notify the insurer of the interview between McGinnis and the Smiths. Some time after that interview, but just when does not appear, the Smiths employed an attorney, W. I. Kinsey, who on February 28, 1925, wrote Armour & Company as follows: "Gentlemen: On February 4th, 1919, one of your auto trucks struck and seriously injured a young boy by the name of Bruce Smith at the intersection of 5th and Market Streets, Steubenville, Ohio. His parents, Mr. and Mrs. Harry Smith, of Washington Street, this city, have called to see me concerning the matter, claiming that you are responsible for the injuries to their son. If you care to discuss this matter with me, I shall be pleased to receive you at an early convenient time you may suggest. However, should you not desire to do so, I would thank you to so advise me. Yours truly, W. I. Kinsey."

Plaintiff claims that on March 11, 1925, it. wrote and mailed to defendant a letter as follows, enclosing therewith Mr. Kinsey's letter: "Gentlemen: Re: Injury to Bruce Smith, Feb. 4, 1919. We are enclosing herewith letter from the attorney representing the plaintiff in the captioned case. This matter was reported to you with our letter of February 7th, 1919. Will you kindly handle this matter direct with this attorney? Yours very truly, Armour & Company."

Defendant claims it never received that letter and knew nothing of a claim having been made against Armour & Company until suit was filed against that company in February, 1926. On February 8, 1926, Bruce Smith, yet a minor, brought suit by next friend in a state court in Jefferson County, Ohio, which was thereafter removed to and tried in the United States District Court, resulting in a judgment for the plaintiff, which Armour & Company paid. That case was tried in March, 1927. Upon the filing of that suit in February, 1926, plaintiff herein immediately forwarded to defendant the summons therein and a notice to take depositions which had been served upon plaintiff with the summons, and requested defendant to attend to the case. Defendant thereupon made investigation, in the course of which it was given access to and examined plaintiff's files, and learned of the above-mentioned interview between McGinnis and Mr. and Mrs. Smith. Defendant then, on March 5, 1926, wrote plaintiff refusing to recognize liability or to defend the Bruce Smith suit on the ground that a claim had been made against plaintiff, within the purview of the policy, on December 13, 1924, and that plaintiff had failed to give immediate notice thereof as provided in the policy. Defendant, by its answer herein, pleads as its only defense, that it was released from liability because of plaintiff's failure to give immediate notice of said alleged claim made on December 13, 1924.

Nothing is said about failure to give notice of the claim made on behalf of Bruce Smith by Mr. Kinsey in his letter of February 28, 1925.

As we have stated, defendant claimed that it never received plaintiff's letter of March 11, 1925, enclosing Mr. Kinsey's letter to plaintiff. To sustain that claim defendant called Robert M. Wilson who testified that he had been employed by defendant as claims attorney since 1917 and had charge of and himself kept the files in connection with the Bruce Smith injury; that "we received no communication from Armour & Company or from any one else with reference to this claim between February, 1919 and February, 1926. I examined my file in an effort to locate a letter from Armour & Company in 1924 and 1925 and could find none."

In rebuttal plaintiff called the persons in its employ at the time in question who attended to the mailing of letters. Mr. Openlander, claim adjuster, testified that on March 11, 1925, he dictated to his stenographer and signed the letter of that date above quoted, attached thereto Kinsey's letter and placed the letter thus prepared in the mailing basket on his desk to be mailed; that Kinsey's letter went with his letter. The stenographer who then worked for him, Mrs. Allen, nee Sweeney, testified that she did not recollect mailing the particular letter, but that it was her custom—and her testimony indicates it was her duty—to take the letters so left in the mailing basket to the mail department in plaintiff's office, which was close to Mr. Openlander's room. She first said that after the letters were signed and placed in the basket: "I would generally take the mail out of the basket and put it in the envelope and seal them and take them out to the mail department." Later in her testimony she omitted the use of the word "generally." Asked specifically to state her custom with reference to letters she had transcribed she said: "I would transcribe them and bring them back to the man who dictated them; lay them on his desk for his signature. And then they would be put in the basket, which was on the desk  .  .  .  and I would go over and get them and seal them—or put them in the envelopes and seal them and take them out to the mail department." "Q. Was that a custom with you in your work down there? A. Yes."

Mr. Forsyth, who was in charge of the mail department in plaintiff's office at the time in question described the regular custom of the department in handling the mail. He said that all the mail from the various departments of Armour & Company came to his department—"couldn't come anywhere else;" that unless already sealed, it was there sealed, and was then stamped and put into Government mail sacks or gurneys, of which there were three, which would then be closed and placed on a table from which they would be col-

lected about every hour by a mail carrier employed by the company, and taken to the post office. He said that all of the mail went into those sacks or gurneys, "it had to go in there;" that such was the custom in vogue on March 11, 1925. He also said that all of Armour & Company's envelopes had the company's return address printed on them. He did not, of course, remember handling this particular letter.

Joseph Conklin testified that for the past eighteen years he had been employed by plaintiff to' carry the mail from the mail department of its office to the post office, which he did by automobile; that he would get the mail sacks or gurneys out of the mail department, Mr. Forsyth's department, take them into the post office and place them on a table in the post office where they were taken charge of by the clerks in that office; that he made trips about every forty-five minutes; that he worked every day except Sundays; that he was never off duty except on vacations, and took no vacations in March; "never was off a day in March in the world as I know of since I have been with the firm."

After the proof was made of the custom followed by plaintiff in mailing letters a carbon copy of plaintiff's said letter of March 11, 1925, taken from its files and identified by Mr. Openlander, and Mr. Kinsey's letter of February 28, 1925, were introduced in evidence, without objection, as plaintiff's Exhibits 7 and 8, respectively.

The plaintiff requested and was given an instruction telling the jury that "the condition contained in the policy sued upon requiring the insured therein to give immediate notice to the insurance company of any claim, if any, made upon insured, only requires such notice to be given within a reasonable time after the assertion of such claim" and that in order to find for the defendant the jury must find that the parents of Bruce Smith, prior to the institution of his suit against Armour & Company made a claim against said company on his behalf and that Armour & Company did not give notice of such claim to defendant within a reasonable time thereafter; and that in determining what was a reasonable time the jury might consider all the attendant facts and circumstances shown in evidence.

Defendant, except for a requested peremptory instruction which was refused, asked and was given only one instruction, which directed a verdict for defendant if the jury found that a claim was first made on behalf of the injured boy or his parents in December, 1924, and that Armour & Company was informed of such claim on December 13, 1924, and did not give notice thereof to defendant "immediately, or within a reasonable time, under all the facts and circumstances as disclosed by the evidence in the case."

Appellant's contention is that "the failure of the plaintiff to give notice to the defendant of the claims made upon plaintiff by the in-

jured party for a period of more than fourteen months after the first claim was made, and for more than eleven months after the second claim was made, was, as a matter of law, a failure to give notice of the claims within a reasonable time." The "first claim," according to appellant's view, was the request made by Mr. and Mrs. Smith in their interview with Mr. McGinnis of December 13, 1924. The second was that made by Mr. Kinsey in his letter to plaintiff of February 28, 1925. The above contention, quoted from appellant's brief, rests upon the theory that there was no evidence to warrant a finding that plaintiff's letter of March 11, 1925, to defendant, was mailed. Appellant insists that the first and only notice given it by plaintiff that a claim had been made against plaintiff was the latter's letter of February 11, 1926, enclosing the summons and notice to take depositions in the suit which Bruce Smith had filed against plaintiff herein on February 8, 1926.

We are unable to agree with this contention of appellant. As we have pointed out plaintiff called all persons in its employ at the time who had to do with the mailing of letters. Their testimony shows that the plaintiff sent out daily a large amount of mail. Obviously it would be impossible for the employees to testify that they remembered, several years later, mailing a specific letter, unless there was some special circumstance to impress the fact upon their memories. Their testimony shows that outgoing mail was handled according to a regular and strict routine. The business of such a large concern could hardly be conducted efficiently otherwise. Appellant says that if each of the witnesses had testified that it was his or her "invariable rule" to do the things testified to it would be sufficient but that it is not sufficient for the witness merely to testify to the custom or general rule, citing: Goucher v. Carthage Novelty Co., 116 Mo. App. 99, 91 S. W. 447; Ward v. Morr Transfer & Storage Co., 119 Mo. App. 83, 95 S. W. 964; Hardin Grain Co. v. Mo. Pac. Ry. Co., 120 Mo. App. 203, 96 S. W. 681; Collins v. Hoover, 205 Mo. App. 93, 218 S. W. 940; Peirson-Lathrop Grain Co. v. Barker (Mo. App.), 223 S. W. 941. In the Goucher case the notary who prepared the notice in question testified that she prepared it and left it in the regular place in the law office for outgoing mail and that "Mr. Gray attended each day to the mailing of such letters." Mr. Gray did not testify. The court held the evidence insufficient to show mailing, saying that the testimony left the letter in the lawyer's office and it could not be presumed that it found its way to the post office. The court further said: "The rule first announced by Lord ELLENBOROUGH in the case of Hetherington v. Kemp, 4 Camp. 193, appears to have the support of authority. In that case, a notice was written by a merchant in his countinghouse and put down upon a table for the purpose of being carried thence to the post office, and it was

shown that by the course of business all letters deposited upon that table were carried by a porter to the post office. The judge held the evidence insufficient, saying; 'Some evidence must be given that the letter was taken from the table in the countinghouse and put into the post office. Had you called the porter and he had said that, although he had no recollection of the letter in question, he invariably carried to the post office all the letters found upon the table, this might have done. But I cannot hold this general evidence of the course of business in the plaintiff's countinghouse to be sufficient.' (Citing cases.)

"The notary's assertion that 'Mr. Gray always mails the letters' was no evidence of the fact that he mailed this particular letter, for two reasons. It necessarily was based solely upon hearsay information, for no claim is made that the notary knew except by hearsay what Mr. Gray invariably did with letters after he left his office; and it is an attempt to establish the fact of mailing by proof alone of a custom in that particular office. The evidence carries no probative value and we must hold that plaintiff failed to prove the mailing of the notice."

In the other cases cited there was also a failure to call as witnesses all of the persons who had to do with the mailing of letters. They follow the Goucher case and the rule laid down by Lord ELLENBOROUGH in Hetherington v. Kemp, 4 Camp. 193. The latter case came under review in Thallhimer v. Brinkerhoff (N. Y.), 6 Cowen, 90, wherein the clerk whose duty it was to copy letters in a letter book and then mail them testified (6 Cowen, l. c. 100): "That it was his invariable practice to carry the original letters to the post office as soon as he had copied them in that letter-book. *That he very seldom handed them back.*" (Italics ours.) The court held that the evidence made a sufficient showing that the letter had been sent. "It comes fully up to what Lord ELLENBOROUGH, in Hetherington v. Kemp (4 Camp. 193), held would be sufficient." If the clerk in the Thallhimer case only *very seldom* (but perhaps sometimes) handed the letters back, it would seem that his testimony tended no more strongly to show an "invariable" practice than in the instant case, if, indeed, as strongly.

In Equity Elevator Co. v. Union Pacific Ry. Co. (Mo. App.), 191 S. W. 1067, a question was whether a car was in good condition when delivered to the carrier. The only evidence was that of a witness who testified that it was his custom to examine cars before they left the yard and that he would not permit a car to leave unless it was in good condition; that he had no recollection of the particular car but would have known, by reason of such custom, that it was not in good condition, if such had been the fact. It was held that his testimony made a case for the jury.

In the following cases the proof of custom relied upon to establish the fact that a letter had been mailed, was no stronger, we think, than in the case before us, and it was held sufficient to take the question to the jury; Hastings v. Brooklyn Life Ins. Co., 138 N. Y. 473, 34 N. E. 289; Backdahl v. Grand Lodge A. O. U. W., 46 Minn. 61, 48 N. W. 454; Hughes v. Pac. Wharf & Storage Co. (Cal.), 205 Pac. 105, where the question is discussed at length and cases cited; Swampscott Machine Co. v. Rice, 159 Mass. 404, 34 N. E. 520; Smith v. Heitman Company, 44 Tex. Civ. App. 358, 98 S. W. 1074; Myers v. Moore-Kile Company (C. C. A.), 279 Fed. 233, 25 A. L. R. 1. And see annotation to Federal Asbestos Co. v. Zimmerman (Wis.), 25 A. L. R. 5, 1. c. 13 et seq.

In the case at bar, while the witnesses did not use the words "invariable practice" or "invariable rule," their testimony shows that the practice or custom testified to was the settled custom and usage of plaintiff's office, regularly and systematically followed in the transaction of its business. There is nothing in the evidence indicating that it was ever varied from.

Appellant's evidence that the letter in question was never received is not of a conclusive nature. But one witness, its claims attorney, Mr. Wilson, testified on that point. His testimony does not show that mail addressed to defendant's home office came first to his desk. It indicates the contrary. He could not know except by hearsay that the letter had not reached defendant's office and come into the hands of some officer of the company. His testimony that defendant never received the letter is necessarily a conclusion or based on hearsay. [Goucher v. Novelty Co., supra.] His testimony that he had examined *his* file and could find therein no such letter does not prove that the letter did not reach defendant's office.

Proof that a letter was mailed raises a prima facie presumption that it was received by the addressee. [Clark v. Cole County, 272 Mo. 135, 197 S. W. 905.] In this case the policy provided for notice by mail. Note the closing words of the above-quoted excerpt: "Mail notice immediately. Home Office Pierce Building, St. Louis, Mo." And the letters in question, after the evidence of mailing had been given, were introduced and read in evidence without objection.

As tending to show the probability that plaintiff mailed Exhibits 7 and 8, as it contends it did, the fact that concededly it promptly notified defendant of the accident when it occurred and of the filing of Bruce Smith's suit, in strict compliance with the policy provision, may have some significance. It seems improbable that it would have overlooked sending notice of the claim when it received Mr. Kinsey's letter. However, we need not consider such probability. Aside from that we are of opinion that in view of all the facts and circumstances shown the question of whether notice of claim was mailed to defend-

ant as contended by plaintiff was for the jury. The jury decided it against defendant.

It seems to be conceded that plaintiff gave defendant no notice of the interview of December 13, 1924, between McGinnis and the Smiths until defendant discovered it through its investigation and its examination of plaintiff's files after Bruce Smith filed suit. However, we do not understand defendant to contend that if the evidence justifies a finding that the notice of March 11, 1925, was mailed such notice of claim would not be sufficient and its timeliness a question for the jury. And we could not uphold such contention if made. It is very doubtful whether the Smiths can be said to have made a claim at all on that occasion. What they said, as testified to by McGinnis, who was defendant's witness, certainly did not amount to the assertion of a claim, even for themselves, much less on behalf of the injured boy. It was a plea for aid in the nature of a gratuity. [Whitby v. Armour & Company, 114 Kan. 445, 219 Pac. 253; Ideal Fuel Co. v. Industrial Commission, 298 Ill. 463, 131 N. E. 649.] Both those cases were under Workmen's Compensation statutes requiring a claim to be asserted within a given time. In the latter the court said, 298 Ill. l. c. 468: "No special form for claim of compensation is required and the claim need not be in writing, but it must apprise the employer that the employee has sustained injury of such a character as to entitle him to compensation and that such claim will be made." If it can be said that the statements of Mr. and Mrs. Smith to McGinnis, as testified to by them, contained a hint that a lawsuit might lurk in the background if they did not get the help they sought, it is no more than a hint. It can hardly be characterized as the assertion of a claim for damages or compensation on behalf of Bruce Smith. They did not claim that he was entitled to or would demand damages. They did not intimate that they had employed or consulted counsel in his behalf. They were informed by McGinnis that he would write Armour & Company to ascertain their sentiments in regard to giving the help sought and it does not appear that they again called upon him to learn the result of such inquiry. Shortly after the accident they had stated that no claim on account thereof would be made, and not until Mr. Kinsey's letter of February 28, 1925, to Armour & Company was there a definite claim made or definite notice to Armour & Company that such claim would be made.

In Columbia Paper Stock Company v. Fidelity & Casualty Co., 104 Mo. App. 157, 166, 78 S. W. 320, it is said that: "If no time is specified, or notice is required to be given immediately, notice given with diligence and in a reasonable time, due regard being had to the attending circumstances, is a legal compliance with such condition." Such seems to be the general rule. [See note to Clements v. Pre-

ferred Acc. Ins. Co. (C. C. A.), 76 A. L. R. 17, p. 53 et seq.] Since both parties here seem to proceed upon the theory that such is the correct construction of the term "immediate notice" as used in the policy we need not further discuss that question. It is not contended that if notice was given March 11, 1925, it was not within a reasonable time after the assertion of claim by Mr. Kinsey's letter. Under the facts and circumstances of this case, even if it could be said that Mr. and Mrs. Smith made a claim on behalf of Bruce Smith against Armour & Company in their interview with McGinnis on December 13, 1924, which we gravely doubt, we think it cannot be said as a matter of law that the notice of claim given March 11, 1925, was not a compliance with the requirement of the policy. We think the court did not err in submitting that question to the jury.

Appellant contends that the court should have declared, as matter of law, that notice of claim was not given within a reasonable time, "instead of submitting the reasonableness of the time as an issue of fact to be determined by the jury." This complaint is directed against plaintiff's principal instruction and is based on the theory that it conclusively appears that the first and only notice of claim was when plaintiff mailed to defendant the summons in the Bruce Smith suit. What we have said above disposes of this contention adversely to defendant.

Plaintiff urges that the policy contained no provision for forfeiture for failure to give notice of claim; that defendant was not prejudiced even if it failed to receive notice of claim prior to the filing of Bruce Smith's suit, since it had received prompt notice of the accident and had fully investigated the facts and about a year elapsed after the filing of that suit, of which prompt notice was given, before that case was tried. We deem it unnecessary to consider that point. It appears to us from the record that plaintiff tried and submitted its case below on the theory that notice of claim was an essential condition of the policy, and therefore must adhere to that theory on this appeal. And since the jury found for the plaintiff on the question of notice and we hold that there was evidence to sustain such finding it is unnecessary to determine whether or not the notice was a prerequisite to the right of recovery. The judgment of the circuit court is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.