J. L. PRICE BROKERAGE COMPANY, Respondent, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, April 4, 1921.

1. **RAILROADS: Receivers: Discharge of Receiver no Bar to Claim Against Railroad Assuming Obligations.** Where a railroad reorganization committee, in order to procure discharge of receivership, made an offer that railroad would assume all contracts, undertakings and commitments of receiver and the prosecution and defense of all actions, suits or litigations and the decree of court accepting the offer of said committee and discharging receiver provided for such assumption and also required claims to be filed and presented to a special master before a certain date, and that if not so filed and presented that the same should be barred from participating in any of the property of railway company, *held* decree merely barred claim of character sued on from participating in property of railway company and did not prevent the same from being prosecuted against defendant after discharge of receiver or exonerate defendant from liability.

2. ———: ———: **Reorganization: Agreement Held not Solely as Contract to Indemnify Receiver but Assumption of Liability as to Third Person.** Where an offer of a reorganization committee to procure discharge of receiver, provided that railway company should as-

sume all contracts, undertakings, and commitments of receiver with right to make any defense receiver could make, and to assume prosecution and defense of all actions, suits or litigations, such offer was not solely to indemnify receiver, but provided for assumption of liability to third persons.

3. **EVIDENCE: Presumption: Letter Properly Addressed, Stamped and Deposited in Place for Receipt of Mail Presumed Received in Due Course.** Evidence that letter was mailed to addressee is equivalent to a statement that it was properly addressed, stamped and deposited in a proper place for receipt of mail, and raises a presumption that it was received in due course.

4. **CARRIERS: Delivery of Potatoes Contrary to Shipper's Order Violation of Carrier's Duty.** Where potatoes were shipped by owner to its order with delivery order attached to draft, and agent at point of delivery was notified to deliver them to a certain company on presentation of delivery order, and bill of lading was released to agent at shipping point so that delivery could be made on presentation of order, delivery of potatoes contrary to such order was a violation of carrier's duty.

Appeal from the Circuit Court of Buchanan County.— *Hon. Lawrence A. Vories*, Judge.

AFFIRMED.

*W. K. Amick* for respondent.

*John E. Dolman* and *Sam Wilcox* for appellant.

BLAND, J.—This is an action to recover damages for the misdelivery of a car of potatoes. Plaintiff recovered a verdict and judgment in the sum of $2272.44, and defendant has appealed.

The facts show that on April 24, 1917, plaintiff delivered to the receiver of defendant railway, who was then in charge of and operating the same, a car of potatoes at Minneapolis, Minn. to be shipped to Ottawa, Ill., under a shipper's order bill of lading. About the time the shipment was made a written delivery order was attached to a draft, which plaintiff drew upon Abraham and Company, Ottawa, Ill., for the purchase

price of the potatoes, and deposited in the bank of Buchanan County at St. Joseph, Missouri. Thereafter said draft with delivery order attached was forwarded by said bank to a bank in Ottawa, Ill. The delivery order was addressed to the agent of the receiver at Ottawa, Ill., instructing him to deliver the potatoes to Abraham & Company at that place "on presentation of this order without surrender of the original bill of lading." On the same day that the order was drawn plaintiff wrote said agent at said place "this car is for Abraham & Company of your city, kindly notify them of arrival and allow them to inspect the same, but *deliver car only upon presentation of written order signed by us.*" (Italics ours.)

Some controversy arose between plaintiff and Abraham & Company about the potatoes and much correspondence was had between the two but plaintiff never at any time consented that the potatoes should be delivered to Abraham & Company except upon the payment of the draft attached to the delivery order and presentation of the latter to the receiver. Plaintiff released the bill of lading without endorsement to the agent of the receiver at St Joseph, Missouri. Plaintiff's agent testified that he did this in order that the agent of the receiver could forward it to Ottawa, Ill., so that Abraham & Company could secure the delivery of the car by taking up the delivery order and surrendering it to receiver's agent at Ottawa. Defendant's evidence tends to show that there was a verbal order given the agent of the receiver at St. Joseph to deliver the potatoes to Abraham & Company but plaintiff's evidence tended to show the contrary. Thereafter on May 14, 1917, without any authority or consent of plaintiff, the agent of the receiver at Ottawa, Ill., delivered the potatoes to Abraham & Company and this suit resulted.

The petition seeks to make the defendant liable for the act of receiver. It pleads that at the time of the delivery of the potatoes to the receiver the defendant

company was being operated by said receiver under an order of the District Court of the United States for the Northern District of Illinois; that on or about June 24, 1917, all of the property and effects of the denfendant in the hands of the receiver was by that court—"turned back and surrendered to this defendant, upon an agreement by this defendant and the order of said court that the defendant was to take said property from said receiver and take over and assume the defense of all suits or litigations, to which the receiver could be made a party, and be liable to pay all obligations and judgments that said receiver would, or could, be liable to pay. That the cause of action herein sued on is one for which the receiver was originally liable to defend and pay. That said receiver was by said court, on June 24, 1917, discharged, and cannot be sued by plaintiff, and plaintiff's remedy is against the defendant herein."

The petition herein was filed on April 15, 1918. The answer was a general denial and a plea that the order of court turning back the property to the company provided that the claim sued on herein and other claims against the receiver should be enforced by presentment to a Special Master in Chancery and, unless they were filed before such Master prior to July 14, 1917, they should be barred unless thereafter allowed to be filed by separate order. The answer pleads that the Master published the notice in reference to the filing of such claim as provided by the order and that plaintiff failed to present its claim to said Master. Defendant offered an instruction in the nature of a demurrer to the evidence which was refused.

The facts show that the company was lifted of the receivership on June 12, 1917, and that the receiver was discharged on July 27, 1917. In order to procure the discharge of the receivership the reorganization committee of the defendant on May 27, 1917, made an offer to the court in which defendant herein agreed to perform certain things therein mentioned; said offer was contained in what is referred to in the proceedings as

"subdivision A." Section 1 of subdivision A, provides for the payment of receiver certificates and short term notes. Section 2 provides that defendant assume the payment of all money debts and money obligations incurred by the receiver in the operation of the railroad. Section 3 provides—

"All obligation and liability of the Receiver to perform, in accordance with their present terms or as hereafter modified, any and all contracts, undertakings and commitments made or adopted by the Receiver acting as such will be assumed."

Section 4 provides that sections 2 and 3 are made subject to an order of the court which should provide that any matters mentioned in said sections might be contested and the enforcement thereof by others might be defended to the same extent as the receiver himself could contest the same. Section 5 provides that defendant shall see that the compensation of the receiver is paid. Section 6 provides—

"The prosecution and defense on behalf of the Receiver, without cost or expense to him, of any and all actions, suits or litigations to which he is or may be a party will be taken over and assumed by the railway company, with the right, however, to control, continue or alter the policy of any such prosecution or defense, and with the further reservation that the payment of any final judgment in any action now pending or which hereafter may be rendered against the Receiver in any such action now pending shall be subject to such order as this court shall make relative thereto, either by way of reference to the Special Master heretofore appointed or otherwise."

Section 7 provides that the defendant shall indemnify and hold harmless the receiver against "all claims, demands, suits, actions, litigations, liabilities, damages, costs, expense or other matters whatsoever arising or accruing from all or any of his acts as Receiver." The decree of court accepting the offer of the re-organization committee and discharging the receiver, provided—

"9. . . . That the defendant railway company be and it is hereby authorized and required, but upon the conditions and reservations therein prescribed ,to make the several payments described in subdivision A of said offer, to the extent that they have not been paid or shall not have been paid out of moneys in the possession of the receiver. That this decree is made upon the express condition. that the defendant railway company shall make (except to the extent aforesaid) all the payments, *assume all the obligations and liabilities, take over and assume the prosecution and defense of all litigations* and make all agreements of indemnity, in the manner and upon the conditions and reservations in said subdivision A expressed," (Italics ours.)

It also provides—

"11. That all persons having claims against the railway company or its receivers or receiver (except the holders of bonds secured by mortgage or deed of trust covering any of the property of the railway company or of any of its subsidiary, affiliated or controlled corporations) not heretofore proved in this cause, be and they are hereby authorized and directed to present and file the same herein not later than July 14, 1917, before said Herbert A. Lundahl, special Master, heretoforefore appointed herein, for consideration and report by said special master to this court, and that every claim (except that of a bondholder as aforesaid), not filed in this cause on or prior to said July 14, 1917, unless hereafter allowed to be filed by separate order herein by reason of the special conditions appertaining to any *such claim be and it is hereby barred, determined and for naught held, and barred from participating in any way in any of the property of the defendant railway company,* and said special master shall give public notice of the place where and the time within which such claims may be filed and proved, by causing publication there to be made." (Italics ours.)

It is insisted by the defendant that by reason of the italicized part of paragraph 11 of the order and decree

quoted supra, plaintiff's claim is barred, he not having presented the same to the Master in Chancery as by such order provided. In this connection it will be noted that plaintiff at the time of the entry of said order, which was on June 12, 1917, had a claim against the receiver of the kind mentioned in the order as not having been proved and that he failed to make proof of the same before the special master as in said order provided.

In construing the offer of the reorganization committee, together with the order and decree of the court made thereon, we are unable to agree with defendant's contention. By the offer of the railway company, which was accepted by the court and specifically referred to in the order and decree turning back the property to the company, it undertook and agreed to assume "all obligations and liabilities of the receiver to perform any and all contracts, undertakings and commitments" reserving the right to contest the legality and enforcement of the same, and agreed to defend "on behalf of the receiver, without cost or expense to him, of any and all actions, suits or litigations, to which he is or may be a party." In the taking over and assumption of such actions, suits or litigations a reservation was made to the effect that the payment of any final judgment in any action pending or which might thereafter be rendered against the receiver in any action then pending, should be subject to an order of court to refer the matters to a special master "or otherwise." Of course, this latter reservation does not cover the claim sued on herein. The order and decree discharging the receiver expressly provides, in reference to the character of claim now in suit, that the railway company should make all payments, assume all the obligations and liabilities and take over and assume the defense of all litigations in any manner and upon the conditions and reservations as expressed in subdivision A. By these provisions defendant is clearly liable for the cause of action sued on herein. [Baltimore and O. R. R. Co. v. Burris, 111 Fed. 882.]

We do not think that paragraph 11 of the order and decree bars the prosecution of this suit. It was not the intention of the court after having accepted the offer of the railway company to assume all contracts, undertakings and commitments of the receiver and provisions in the offer that such matters might be contested by it, and further provisions in such offer containing a plain inference that it would pay any judgments that might be rendered in any suits brought growing out of any such contracts, undertakings and commitments, and having decreed that the order discharging the property out of the hands of the receiver was made expressly upon the condition that the railway company should assume all obligations and liabilities of the receiver as well as the defense of all litigation growing out of the receivership, to thereafter provide that the railway company should not be liable for the matters and things assumed by it. It is apparent that paragraph 11 bars *claims* of the kind sued upon in this case from *participating in the property of the railway company in the hands of the receiver* unless they were proved up as provided therein. Paragraph 11 of the order does not prevent such claim being prosecuted against defendant after the discharge of the receiver, or exonerate defendant from liability to pay for the same. It simply debars any claim against the receiver, or a claim that had arisen against the railway company prior to the receivership, from participating *in the receivership estate,* unless they were proved in the manner therein described. Sections 3, 4, and 6 of subdivision A are not solely to indemnify the receiver but provide for assumption of liability to third persons. [State v. Railway, 125 Mo. 596, 615 616.]

It is claimed that the letter that was written by plaintiff at St. Joseph, Missouri, and addressed to the receiver's agent at Ottawa, Ill., wherein directions were given to deliver the potatoes to Abraham & Company, only upon presentation of the written order, was never received by the agent at Ottawa, Ill., for the reason that defendant's evidence shows that it was never received by the agent at that place and plaintiff's evidence does

not show that it was.   The evidence is that this letter
was "mailed" by J. L. Price Brokerage Company to the
agent of the Rock Island Railway Company at Ottawa,
Ill.   The testimony that a letter was "mailed" to the
addressee is equivalent to a statement by the witness
that it was properly addressed, stamped, and deposited
in a proper place for the receipt of mail.   Such testimony
is sufficient to raise a presumption that it' was received
in due course.   [Ward v. Transfer & Storage Co., 119
Mo. App. 83, 88; Twohig v. Denver & R. G. R. Co., 218
S. W. 897, 898.]   There was some evidence in the rec-
ord tending to show that the letter was not received by
the agent but this conflict was a matter for the jury and
they decided it against the defendant.

We think that the receiver clearly violated his duty
in delivering the potatoes to Abraham & Company con-
trary to the order of plaintiff; that plaintiff has shown
itself entitled to recover and that defendant's demurrer
to the evidence was properly overruled.   [Marshall &
Michel Grain Co. v. Railway, 176 Mo. 480; Ginnochio-
Jones Fruit Co. v. Railway, 134 S. W. 1028; 1 Michie on
Carriers, sec. 858; 2 Hutchinson Carriers (3 Ed.) sec. 660;
10 C. J. 262; Woolston v. So. Ry. Co. 177 Mo. 611.]   This
disposes of the contention that the potatoes were deliver-
ed to the person for whom they were intended.   The
facts in this case are not like those in Fowler v. Railway,
98 Mo. App. 210.

The judgment is affirmed.   All concur.