**Maude WARDIN, Respondent,**

v.

**A. C. QUINN, Executor of the Estate of Ata R. Wardin, deceased, Appellant.**

**No. 22959.**

Kansas City Court of Appeals.

Missouri.

May 4, 1959.

A. E. Elliott, Nevada, for appellant.

Robert L. Ewing, Bartley J. Readey, Nevada, for respondent.

HUNTER, Judge.

This is an appeal from a judgment of the Circuit Court of Vernon County for $905.71 for services rendered, in favor of Maude Wardin, claimant-respondent, and against defendant-appellant A. C. Quinn, executor of the estate of Ata R. Wardin, deceased.

The action commenced on March 5, 1958, with the filing of a claim in the probate court of Vernon County by Maude Wardin against the estate of Ata R. Wardin, deceased, for $905.71, allegedly owing for services performed by her for deceased at deceased's request between September 12, 1956, and October 1, 1957. The claim was allowed in the full amount by the Probate Court. Appellant appealed to the circuit court. There appellant filed his written offer for judgment for respondent for $305.71, and denied any further liability. A jury was waived, and upon the evidence heard, the circuit court found the issues for respondent and rendered judgment for respondent for the full amount of the claim. This appeal followed.

■ This being a jury waived case, our duty on appeal is to review it upon both the law and the evidence as in suits of an equitable nature. The judgment is not to be set

aside unless clearly erroneous, and due regard is to be given to the opportunity of the trial court to judge the credibility of the witnesses. Browder v. Milla, Mo.App., 296 S.W.2d 502, 505; Section 510.310 RSMo 1949, V.A.M.S.

Appellant contends the judgment is excessive in the sum of $600 and should have been for $305.71 instead of $905.71 for the reason that any amount in excess of $305.71 is not supported by any competent and substantial evidence, is contrary to admitted and physical facts, and "must be caused by speculation, conjecture and inflation."

According to the evidence before the circuit court, Maude Wardin was a teacher in the public schools of Nevada, Missouri, and had been teaching there for twenty years. Sometime prior to 1934 she had been married to Herbert Wardin, who was Ata R. Wardin's brother's son. That marriage terminated about 1934. Maude Wardin owned and occupied a two story seven room house in Nevada, Missouri.

Ata R. Wardin in 1956 was 86 years of age. She was in failing health, and required rest home care. On September 12, 1956, she left Elders Nursing Home and came to respondent's home and arranged for her lodging, board and care. "She said because of the uncertainty of life she did not know how long her money would hold out but that I had taken her into my home and if I had not that it would have been necessary for her to have gone to this nursing home where it would have been necessary to have paid $150.00 a month; that she was giving me $75.00 a month now and if and when the time came that the money was available she wanted me to have the difference between the $150.00 and what she had paid me. * * * She said she would pay me the difference between what she would have paid in this nursing home that she would have gone to and the $75.00 that she had paid me.

"Q. She would pay you the difference between what she was paying you and Mrs.

Wyatt's? A. Not Mrs. Wyatt's. She was not going back to Mrs. Wyatt's.

"Q. She would pay you the difference between what? A. What she would have paid had she gone to this next nursing home. I didn't ask where they had been looking for a place.

"Q. Let me get that clear. She would pay you the difference which she would have to pay in any other nursing home? A. I didn't say any other nursing home.

"Q. What nursing home was it? A. Tate's."

She remained in respondent's home for the next 12½ months. She was given respondent's large bedroom on the first floor together with full house privileges, especially of the kitchen and of the four downstairs rooms and bath. Respondent prepared her breakfasts, most of the time brought her a full dinner at noon and either brought in or prepared her evening meals. Nearly all these meals and groceries were paid for by respondent. Respondent also did most of her laundry, bathed her at times, took her out frequently in respondent's automobile to transact business, to have dental care, took her shopping, ran daily innumerable errands for her, and provided her with many other described services and attentions.

Ata Wardin's physical condition was such that she was infirm, crippled and had to get around in a wheel chair, or to a very limited amount, with crutches or a cane. She was difficult to take care of, hard to please, and somewhat demanding of services and attention. Respondent gave up many of her own activities after school hours, during vacation times and on other occasions to be with Miss Wardin. On special occasions such as Miss Wardin's birthday, Christmas and Easter rather than be with her own children respondent prepared special meals for Miss Wardin and shared them with her.

Respondent's witness, Sarah Elder, who had operated a nursing home but currently did outside private nursing, testified with-

out objection that the reasonable value of the services respondent rendered Miss Wardin in a home such as provided was $150 a month. She stated that Tate's Nursing Home charged $150 a month for a downstairs room. Mrs. Elder had kept Miss Wardin for about two weeks during the fall of 1956 and had charged her $85 for the room and services she provided.

Appellant's witness, Sadie Kline, testified Miss Wardin came to her nursing home on October 1, 1957, and remained there about two months at which time she fell and broke her hip and had to be placed in the hospital where she died on December 1, 1957. She charged Miss Wardin $100 a month which gave her a room shared with another lady.

Appellant's witness, Nova Wyatt, who had operated a nursing home ever since 1953, had Miss Wardin as a patient just prior to August, 1956. She testified, " * * the charge I made at that time was $100.00 but it should have been more money. She was a lot of care." She further testified, without objection that after hearing respondent's testimony *as to the services rendered by respondent to Miss Wardin,* in her opinion those services were worth $150 a month.

■ Respondent asserts her recovery herein is premised on quantum meruit—that is, that the law implies a promise to pay the reasonable value of the services rendered where the intention to pay is clear and the amount of compensation is not stipulated. Under such circumstances, the rule is that the reasonable value of the services involved would be the price usually and customarily paid for such services or like services at the time and in the locality where the services were rendered. Baker v. Brown's Estate, 365 Mo. 1159, 294 S.W.2d 22.

Appellant agrees that this is the proper basis for a recovery by respondent in the sum of $305.71, but asserts there is no competent, substantial evidence before the court to support a recovery in excess of that amount. Appellant took the same position in the trial court, stating that decedent's estate owed respondent $305.71 determined by taking the difference between the $75 per month for 12 months paid respondent and the sum of $100 a month, that sum being the highest amount testified to as being paid for nursing services at that time in that locality; hence, that sum being its highest reasonable value. An additional expense item of $5.71 was admittedly owing respondent, ($25.00 x 12, + $5.71 = $305.71) making the final total of $305.71.

■ Since quantum meruit was the theory and basis on which appellant tried the case below and argued it on this appeal, we review it on that theory, for it is the general rule that a party is bound by the theory upon which he tried the case in the trial court. King v. Guy, Mo.App., 297 S.W.2d 617, 619 (16); Small v. Wegner, Mo. Sup., 267 S.W.2d 26, 29, 50 A.L.R.2d 170; Kenner v. Aubuchon, Mo.Sup., 280 S.W.2d 820.

With that in mind, we turn our attention and consideration to appellant's first assigned point on appeal that "the opinion of (the) expert witnesses who testified that the services of plaintiff were reasonably worth a $150.00 a month is opposed to the physical facts, and on testimony is pure speculation and should not be regarded as substantial evidence." This contention is not sound. The fact that the witnesses who testified were charging a particular sum for the particular room, meals, and services they were providing in their nursing home does not mean that they are incompetent or barred from testifying to a different and larger sum as being the reasonable value of the particular room with house privileges, meals and services rendered by respondent in her home. There were obvious differences between what they provided and what respondent provided Miss Wardin. These differences, in our view, form a proper basis for their opinion as to a different and higher amount being the reasonable value of respondent's services.

On this appeal appellant for the first time challenges the qualifications of these witnesses to testify as experts to the reasonable value of the described services respondent rendered deceased. Had that challenge been made in the trial court it would have given an opportunity for further development of the qualifications of the witnesses and for the trial court to have exercised its discretion in ruling on the objection, for it is the accepted general rule that the qualifications of an expert witness is a matter resting largely in the discretion of the trial court and its ruling thereon will not be disturbed on appeal unless there is a showing of a clear abuse of that discretion. Davis v. Gatewood, Mo. Sup., 299 S.W.2d 504, 511 (7). Having failed to challenge the qualifications of these witnesses in the trial court it is too late for appellant to successfully challenge them on appeal. In passing, we do not hesitate to say the evidence indicated these witnesses were amply qualified to express their opinion as to the reasonable value of the services respondent rendered deceased. See, Wandling v. Broaddus, Mo.Sup., 10 S.W.2d 651, 654 (2); Ashley v. Williams, 365 Mo. 286, 281 S.W.2d 875 (4); Kivett v. Stanley, Mo. App., 305 S.W.2d 739.

Two of the witnesses, both with experience in the community in owning and operating nursing homes, gave it as their expert opinion that the services respondent provided were worth $150 a month. One of these witnesses, Mrs. Wyatt, was called by appellant as his witness. There was no testimony that the services in question were reasonably worth less than $150. We find no merit in appellant's contention that this evidence was not substantial and was speculative.

Appellant's only other assigned point is that the discussion between respondent and deceased does not support the contention that deceased contracted and agreed to pay respondent $150 a month for the services rendered. However, respondent relies upon quantum meruit rather than upon a contract wherein deceased agreed to pay $150 a month for respondent's services. Thus, according appellant the benefit of his contention, it is no defense to the quantum meruit action.

Our conclusion is that the evidence supported the judgment of the trial court, and our finding is in accordance with that judgment.

The judgment is affirmed. It is so ordered.

All concur.