**Thomas GREATHOUSE (Plaintiff) Respondent,**

v.

**Norman E. WOLFF (Defendant) Appellant.**

**No. 31080.**

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 15, 1962.

James W. Jeans, Gray & Jeans, St. Louis, for appellant.

James F. Koester, St. Louis, for respondent.

WOLFE, Judge.

This is an action for damages arising from personal injuries sustained by the plaintiff. The injuries occurred when the plaintiff was violently jerked forward, by a boat operated by the defendant, while engaging in water skiing. There was a verdict and judgment for $5,000 for the plaintiff, and after an unavailing motion for a new trial the defendant appealed.

The facts giving rise to this action come exclusively from the plaintiff and the defendant. They are brothers-in-law, and in July, 1960 they went to Lake Wappapello for a weekend in which they engaged in water skiing. Plaintiff Greathouse owned a fifteen-foot boat which was powered by a 70 horsepower motor. Greathouse, who was 32 years of age, six feet four inches in height and weighed about 260 pounds,

was an experienced water skier. He described himself as an "expert amateur".

He told in detail the manner in which the skiing was done. He stated that the skis are about five feet long and six inches in width, with a small finlike rudder or stabilizer toward the rear end and turning up slightly at the front. They have a rubber pocket into which the skier's feet fit. The skier is pulled along over the water by a motor boat, to which a seventy-five foot line is attached. The line is attached to one corner of the stern of the boat, and on the skier's end of the line is a wooden handle. This handle, which is about twelve inches long, is fastened in the middle to the tow line. The skier holds on to the handle with both hands and may release it at any time he wishes to do so. Neither the skier nor the skis are attached to the boat or the tow line by anything more than the skier's grip on the tow line handle.

Preparing to get out of the water to an upright position upon the surface, the skier doubles his knees and puts his arms around both legs. The skis are mostly submerged, tilting forward and upward with about a foot of their front above the water. With the skier in this crouched position in the water, gripping the tow line handle, the boat is started forward with sufficient speed to pull the skier to the surface. Greathouse stated that he could ski in a conventional position behind a boat such as he owned at a speed of 35 miles per hour. He said that the conventional posture of skiing was with the arms outstretched and the knees slightly bent. Falls into the water are not infrequent, and it is a mild sensation to so fall. One may do so by releasing the rope handle.

Prior to the weekend venture in question, the defendant Wolff had never done any water skiing, and he had never before operated a boat towing a skier. Wolff was experienced in the operation of motor boats, having engaged in boating on weekends over a period of two years. He had never operated a boat with a 70 horsepower motor before. Greathouse instructed him in the proper way to ski and in the proper way to operate a boat pulling a skier.

They arrived at the lake on Saturday and spent about six or eight hours skiing. They alternated, with Wolff skiing part of the time and Greathouse operating the boat, and then Greathouse would ski and Wolff would operate the boat. Wolff had operated the boat for about three or four hours on the day before the accident, and for about the same time on the day that the accident occurred. Greathouse said that he saw nothing wrong with his operation of the boat until the time of his injury.

As to the accident, Greathouse said that the water was calm and there were no other boats in their immediate vicinity. He had been skiing along in a conventional fashion for about five or ten minutes, at a speed of 20 to 25 miles per hour, when the boat slowed enough for the line to slacken slightly. Then Wolff threw the throttle of the boat wide open without any warning, and Greathouse was jerked from the skis and thrown into the water. His arm bone was dislocated at the shoulder, causing some splinter fractures.

After accelerating the boat Wolff looked back to see how Greathouse was faring, and saw that "he was in the air". He turned the boat, and when he came up to Greathouse he found him in a semi-conscious condition. He got him into the boat, and upon docking, he took him to a hospital. Wolff said to Greathouse, "I don't know what I was thinking about when I threw the throttle wide open. I should have known better than to throw the throttle wide open."

Wolff testified that the proper way to take slack out of the tow line is to slowly accelerate the speed of the motor. His explanation of the reason for the maneuver that he made with the boat, given at the trial, was that there were two racing boats ahead of him. They were about

two blocks away, and he was about to enter their wake. His testimony was as follows:

"A. Well, actually there is a double set of wakes from a boat, each side produces a separate set and when I saw the first set I felt that it would be better to slow the boat down and hit them easy because of the angle of the wake. If you hit a wake at an angle the boat rolls on you and if you hit it too fast with a rolling boat you can do damage not only to the boat but you can throw the operator out of the boat and I slowed down to pull back just as I went into the wake.

"Q. Did you earlier that day or the day before, had you ever encountered a wake such as this while you were towing Tom behind you? A. No.

"Q. Could you tell us what you did when you saw you were going to hit this wake at an angle and you were fearful of some of the things that might happen?

"A. Being afraid that I could possibly be tossed from the boat because of the size of the wake, I slowed the boat down and to do that I had to pull the accelerator back and as I went through the first set, the boat would pitch sideways on me slightly and in order not to lose Tom, I opened the throttle to keep Tom on board and while I was doing that the other boat would be going away from me and I had no more fear of it.

\*   \*   \*   \*   \*   \*

"Q. In this particular instance, what were the particular factors that affected your judgment in moving the throttle forward when you felt the roll of the boat and the lessening of the pull from the back?

"A. I wanted to accomplish three things, one to keep from losing the boat or to keep myself from losing the boat and the other was not to lose the skier and that is why I accelerated."

There was considerable medical testimony about the plaintiff's injuries which need not be here considered, for no point is raised in relation to it. The first point raised by the appellant is that the court erred in giving Instruction No. 1, which is a verdict-directing instruction submitted by the plaintiff-respondent. It is as follows:

"The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence, the defendant was operating a motor boat on Lake Wappapello and that at said time the plaintiff was skiing behind the boat being operated by defendant at the end of a ski rope, if you so find, and if you further find that defendant caused the speed of said motor boat to be decreased by pulling back on the throttle, thereby permitting said ski rope to become slack and that while there was slack in said ski rope, defendant suddenly and without warning to plaintiff increased the speed of the said motor boat by pushing the throttle completely forward and to its maximum speed position, causing said line to become taut and to jerk plaintiff from said skis, thereby causing plaintiff to become injured, if you so find, and if you further find that defendant by suddenly increasing the speed of the boat failed to exercise ordinary care and that defendant was thereby negligent, and that plaintiff was in the exercise of ordinary care for his own safety and could not have known of said sudden increase of speed of said boat, in time thereafter to avoid said accident and injury to plaintiff, if you so find, and if you further find that defendant in the exercise of ordinary care could have known that a sudden increase of speed may jerk and injure the plaintiff, as shown in evidence, and if you further find that said accident and injury was a direct result of the negligence of defendant, then your verdict must be in favor of the plaintiff and against the defendant."

It is asserted that the instruction omits any mention of the wakes of the boats that the defendant encountered, and that by reason of these wakes it was necessary to accelerate the speed of the boat in order to prevent himself from being pitched from the boat and losing the skier behind him. We are cited to the following cases which the defendant considers authority for the point raised. Lloyd v. Alton R. Co., 348 Mo. 1222, 159 S.W.2d 267; Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541; Evans v. Colombo, Mo.Sup., 319 S.W.2d 549; Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496.

We do not find these cases in any way analogous to the one here considered. The first case, Lloyd v. Alton R. Co., has to do with an instruction which assumed facts as to which there were valid inferences to the contrary and another instruction which was not supported by the evidence. The other cases involve action in an emergency situation which was raised as a defense in an automobile collision case; the skidding of an automobile raised as a defense; and divergent conflicting evidence as to the cause of an automobile collision.

The negligence here charged and submitted was that the defendant suddenly threw the throttle of the motor to full speed without warning at the time when the tow line was slack. There was no dispute about this. The defendant admitted it, and the above-quoted instruction covered it. The defendant did not plead or state in evidence that it was necessary, because of the wake of the other boats, to suddenly accelerate to full speed, and a gradual acceleration admittedly would have been harmless. He did not state that it was necessary to approach the wake at the angle of approach employed, or to approach it at all. He did not request any instruction, and none was given nor requested, which covered an emergency situation. The only defense set up by the instructions offered was that under certain facts, not in relation to the wake, the plaintiff could be found guilty of contributory negligence in failing to release the tow line.

■ We must hold the appellant here to the theory upon which he tried the case below. Blankenship v. St. Joseph Fuel Oil & Mfg. Co., 360 Mo. 1171, 232 S.W.2d 954; Huber v. Western & Southern Life Ins. Co. of Cincinnati, Mo.App., 341 S.W.2d 297; Jones v. Missouri Petroleum Products Company, Mo.Sup., 331 S.W.2d 573.

■ It is further asserted that Instruction No. 1 gave the jury a "roving commission" and is confusing. We do not think the instruction could have misled the jury in passing upon the simple issues presented to them, or that it invited them to consider negligence beyond the pleadings and proof.

We consequently hold that the giving of the instruction was not error.

■ The second point raised is that the court erred in permitting the plaintiff to testify that "the normal way to take slack out of the line" is to "ease the throttle slowly forward."

This answer came upon redirect examination of the plaintiff after the defendant's counsel, on extensive cross-examination, had qualified the plaintiff as an expert on skiing and had asked many questions about the manner in which it was done. It was a valid opinion by an expert, and there appeared to be no controversy whatsoever that it properly stated the normal way to take slack out of the line. The defendant himself testified that it was. We find this point to be without merit.

■■ The last point raised goes to the final argument of plaintiff's counsel. He made but slight mention of the plaintiff's injuries in the first part of his argument, and when he started to speak of them in rebuttal, defendant's counsel objected on the grounds that it was not proper rebuttal as nothing had been said about the injuries in the opening part of plaintiff's final argument. This objection was overruled.

It is true that the Canons of Ethics provides (V.A.M.R. 4.22) that it is not candid or fair for a lawyer, where he has the open-

ing and closing arguments, to mislead his opponent by "concealing or withholding positions in his opening argument upon which his side then intends to reply." There appears to be no "concealing or withholding" with the intention to mislead here. The argument in rebuttal did not elaborate upon the injuries to any great extent or even suggest the amount of the verdict. The trial court has wide discretion in passing upon the effect and propriety of arguments by counsel. In the absence of an abuse of that discretion, we defer to the trial court. Votrain v. Illinois Terminal R. Co., Mo. Sup., 268 S.W.2d 838; Goldstein v. Fendelman, Mo.Sup., 336 S.W.2d 661. It may further be stated that there is no claim that the damages awarded are excessive. We find nothing prejudicial to the defendant by reason of the argument.

For the reasons stated, the judgment is affirmed.

ANDERSON, P. J., concurs.

RUDDY, J., not sitting.