Claude J. HOOD, Plaintiff-Respondent,

v.

**M. F. A. MUTUAL INSURANCE COMPANY,**
a corporation, Defendant-Appellant.

No. 8235.

Springfield Court of Appeals.

Missouri.

May 28, 1964.

Motion for Rehearing or to Transfer
Stricken on June 23, 1964.

William H. Burden, Joplin, for defendant-appellant.

Combs & Denney, Kansas City, Max H. Glover, Webb City, for plaintiff-respondent.

STONE, Judge.

In this jury-tried action for recovery under the collision coverage alleged to have been afforded by an automobile insurance policy issued by M.F.A. Mutual Insurance Company, the defendant herein, plaintiff Claude J. Hood initially had judgment for $1,500 upon the jury verdict in that amount. Upon plaintiff's remittitur of $550, defendant's motion for new trial was overruled, and this appeal by defendant from the reduced judgment of $950 has followed.

By defendant's Policy No. 1–248028 (hereinafter referred to as the policy) issued to plaintiff, whose occupation was shown as carpenter and whose address was given as Sarcoxie, Jasper County, Missouri, defendant afforded various coverages, including $50 deductible collision coverage, to plaintiff upon a 1955 Ford tudor for the policy period *"from February 20, 1956 at 9:00 A.M. to April 2, 1956 at 12:01 A.M. standard time * * * and for terms of such duration each thereafter as the required renewal premium is paid by the insured* [plaintiff] *on or before expiration of the current term and received by the company."* (All emphasis herein is ours.) On *April 5, 1956,* plaintiff's Ford automobile was damaged in a collision in Kansas City, Missouri, where plaintiff then was (and for some time had been) working.

The basic factual issue litigated upon trial was whether "the required renewal premium" of $40.84 for the next succeeding policy term of six months had been paid by plaintiff prior to expiration of "the current term," i. e., prior to 12:01 A.M. on April 2, 1956, "and received by the company." Plaintiff testified that "along around five o'clock" in the afternoon of Friday, March 30, 1956, he "went down to Smith Drug Store" at 35th and Prospect in Kansas City, where he purchased an American Express money order for $40.84. "I [plaintiff] filled out the money order to Lloyd Rush [defendant's agent], Carthage, for this premium. I put it in an envelope and taken the envelope out and dropped it in the mailbox * * *." The envelope was addressed to "Lloyd Rush, M.F.A. Agency, South Side of the Square, Carthage, Missouri," and bore a three-cent stamp and

plaintiff's return address. When asked about when the mail was collected at that box, plaintiff's puzzling, obfuscous answer was: "I had mailed several letters on there at that mailbox and I had mailed them at home and the mail was always picked up before six A.M. or six P.M. in the evening. It was picked up before six is the reason I would mail the letters before six so they would be picked up." No other evidence even remotely pertained to the time or frequency of collections at that mailbox, and there was no evidence as to the usual course of mail from that point to Carthage, Missouri, or as to the time ordinarily required for transmission to and delivery in Carthage.

Upon trial, plaintiff introduced in evidence the "sender's receipt" for American Express money order No. KC–10,587,821 (hereinafter referred to as the money order). One side of the "sender's receipt" bore the *printed* money order serial number, the (*dimly*) *stamped* date of "MAR 30 1956," and the *handwritten* (in ink) amount of $40.84. The other side showed "Sent to *Lloyd Rush 3–30–56* For *1955 Ford Ins.* Date *3–30–56*." (The italicized words and figures were handwritten in ink, and some of the figures following "Date" appear to have been written over other figures.) The record does not identify the person who wrote $40.84 on the "sender's receipt," but admittedly plaintiff inserted the handwritten words and figures on the other side. Strangely (so it seems to us) neither party offered any evidence as to what the records of the American Express Company or its issuing agent, Smith Drug Store, showed concerning the money order. There was no suggestion that the money order ever had been presented for payment or paid, but the only specific evidence on this subject was that, in response to an inquiry, the American Express Company advised under date of June 19, 1956, that the money order had not been paid. Prior to trial on February 8, 1963, plaintiff had made no effort to obtain a refund of the face amount of the money order.

Simply stated, defendant's position has been and is that the money order was never received by agent Rush, that the renewal premium was not paid prior to 12:01 A.M. on April 2, 1956, and that the policy then terminated. During a period of about two years prior to April 1956, plaintiff had procured through Lloyd Rush of Carthage, as local agent, not only the policy affording coverage on plaintiff's 1955 Ford tudor but also other insurance coverage. Defendant's evidence was to the effect that renewal premium statements on its insurance policies (excepting those affording group hospitalization coverage) were mailed from its home office at Columbia, Missouri; and that, with each such statement, a self-addressed envelope was enclosed in which the policyholder might mail the premium payment to defendant's home office. However, plaintiff said that he never had mailed a premium payment to defendant's home office, but that all such payments had been made to agent Rush, some in person at Rush's office and (when plaintiff was working "out of town") some by mail addressed to Rush. And, although Rush testified that he was simply "a sales agent," we have no doubt but that, on the evidence in its entirety, the jury reasonably might have found (as was required by plaintiff's verdict-directing instruction 1) that Rush was "acting within the course and scope of his agency" for defendant in receiving premiums paid on policies issued through him as local agent. Cf. M.F.A. Mutual Ins. Co. v. Quinn, Mo.App., 259 S.W.2d 854, 857, 860.

Plaintiff reported the accident of April 5, 1956, to Rush at his office in Carthage on Saturday, April 7, and Rush then gave plaintiff a report form to be completed and returned. On the following Saturday, April 14, plaintiff personally delivered the completed report to Rush, in the meantime having obtained from the Kansas City police department detailed information about the accident. Rush (so he said) first discovered on April 14, "when I went to the file to finish up my report," that the policy had

terminated for nonpayment of the renewal premium. In a subsequent long distance telephone call from Kansas City on the evening of Monday, April 16, plaintiff gave Rush the serial number of the money order alleged to have been mailed on March 30, but Rush (still insisting that he had received no such remittance) definitely stated that "I [plaintiff] didn't have no insurance, that it would be up to me and the company."

■ Defendant's first point on appeal is that plaintiff did not make a submissible case. Plaintiff relies on the general principle that evidence showing that mail matter has been properly addressed and mailed with postage prepaid raises a rebuttable presumption of fact (perhaps more correctly stated, permits an inference to be drawn) that such mail matter was received by the addressee in due course.[1] It is true that, as defendant points out, the only *direct* evidence in these areas was to the effect that the money order was not paid and, in fact, was never received either at defendant's home office or by agent Rush. But such evidence of nonreceipt and nonpayment did not nullify and destroy the so-called presumption of receipt, and the question of receipt remained in the case as one of fact to be determined by the jury under all of the evidence,[2] with the burden of proving receipt still resting upon plaintiff. 31A C.J.S., Evidence, § 136e, loc. cit. 300–301.

■ However, in considering submissibility, we remain mindful that the basic factual issue was whether "the required renewal premium" of $40.84 had been paid by plaintiff prior to expiration of "the current term," i. e., prior to 12:01 A.M. on April 2, 1956, "and received by the company." If not, the policy then terminated. Plaintiff pleaded in his petition "that on or about the 30th day of March, 1956, the plaintiff paid * * * said premium" to Rush as defendant's agent. And plaintiff's verdict-directing instruction 1 required a finding, inter alia, "that on March 30, 1956 and before the expiration date of April 2, 1956 * * * plaintiff properly mailed the premium * * * of $40.84" in a postage prepaid envelope addressed to Rush and deposited in the United States mails in Kansas City, but *no finding was required that the premium had been mailed in time to reach Rush in due course prior to expiration of "the current term" of the policy.* Accordingly, it appears that plaintiff's trial theory was that the renewal premium had been paid on March 30, 1956, by the act of depositing the money order in the United States mails in Kansas City. It was plaintiff's burden to show that defendant had manifested, expressly or impliedly, an intention to accept the renewal premium, *as of the time of mailing.* Tippett v. Farmers' Mut. Fire Ins. Co., Mo.App., 47 S.W.2d 225, 227(4). Nothing in the record so indicated. Quite to the contrary, the policy provided for continuation of coverage only if the required renewal premium was paid prior to expiration of "the current term," i. e., prior to 12:01 A.M. on April 2, 1956, *"and received by the company."*

1. Williams v. Northeast Mut. Ins. Ass'n., Mo.App., 72 S.W.2d 166, 167(2); Roland v. Gassman, Mo.App., 44 S.W.2d 658, 660(4); J. L. Price Brokerage Co. v. Chicago, R. I. & P. Ry. Co., 207 Mo.App. 8, 230 S.W. 374, 377(3); Scheidel Western X-Ray Co. v. Bacon, Mo.App., 201 S.W. 916, 918(5). See also Armour & Co. v. American Automobile Ins. Co., 336 Mo. 551, 80 S.W.2d 685, 689(1); State v. Euge, Mo.App., 349 S.W.2d 502, 506 (9).

2. In re Farmers & Merchants Bank of Center, Mo., Mo.App., 83 S.W.2d 198, 200(3); Williams v. Northeast Mut. Ins. Ass'n., supra, 72 S.W.2d loc. cit. 167(3); McCaskey Register Co. v. Erffmeyer, Mo. App., 46 S.W.2d 256, 258(5, 6); Hawes v. American Central Ins. Co., 222 Mo. App. 1057, 7 S.W.2d 479, 484(9); McCormick on Evidence (1954), § 311, p. 650. See also Clark v. Cole County, 272 Mo. 135, 197 S.W. 905, 906; J. L. Price Brokerage Co., supra, 230 S.W. loc. cit. 377(4); Senaca Co. v. Ellison, Mo.App., 184 S.W. 1177, 1178(4).

In effect, defendant's enclosure of a self-addressed envelope with the renewal premium statement invited plaintiff to mail the premium to defendant's home office; and, *if* the finders of the facts had found that defendant theretofore had followed the practice of accepting premiums paid to Rush both in person and by mail, plaintiff's alleged act of mailing the renewal premium to Rush, rather than to defendant's home office, might have been found to have been within the scope of the invitation to pay by mail. Tippett, supra, 47 S.W.2d loc. cit. 227(1); Kenyon v. Knights Templar, etc., 122 N.Y. 247, 25 N.E. 299, 302. Even so, the permissible inference would have been that defendant intended to accept, as payment of the renewal premium, *funds mailed in time to reach Rush in due course prior to expiration of "the current term,"* i. e., *prior to 12:01 A.M. on April 2, 1956.* Tippett, supra, 47 S.W.2d loc. cit. 227(2); Schlotzhauer v. Central Mut. Ins. Ass'n., 233 Mo.App. 1132, 1142, 128 S.W.2d 1061, 1065(3). See Illinois Life Ins. Co. v. McKay, 6 Ga.App. 285, 64 S.E. 1131, 1133(2, 3); Hartford Life & Annuity Ins. Co. v. Eastman, 54 Neb. 90, 74 N.W. 394, 395(4).

So, for the money order allegedly mailed in Kansas City "along around five o'clock" in the afternoon of Friday, March 30, 1956, to have constituted timely payment of the renewal premium, it would have been necessary to have adduced evidence from which it fairly and reasonably might have been inferred that, in due course of the mails, the envelope (containing the money order) would have been transmitted from the mail box at 35th and Prospect in Kansas City to Carthage in time to have been delivered to Rush on the following day, to wit, on Saturday, March 31, 1956, since there were no mail deliveries on Sunday, April 1, Rush was not shown to have received his mail in a post office lock box, and "the current

term" of the policy expired at one minute after Sunday midnight, i. e., at 12:01 A.M. on April 2.

As we have observed, the only evidence pertaining to the time or frequency of collections from the mail box at 35th and Prospect in Kansas City was plaintiff's testimony that: " * * * the mail was always picked up before six A.M. or six P.M. in the evening. It was picked up before six is the reason I would mail the letters before six so they would be picked up." There was no evidence indicating (a) when, in ordinary course, the envelope alleged to have been mailed at 35th and Prospect would have reached the Kansas City post office, (b) whether mail was transported from Kansas City to Carthage by train, highway post office, or star route contractor, (c) whatever the means of conveyance might have been, the frequency or hours of departure from Kansas City by the carrier, (d) the time required for carriage to Carthage, which we judicially know to be some 145 miles distant from Kansas City [Klotsch v. P. F. Collier & Son Corp., 349 Mo. 40, 159 S.W.2d 589, 592(1); State ex rel. Alton R. Co. v. Shain, 346 Mo. 681, 143 S.W.2d 233, 238(8)], (e) the hours of arrival in Carthage, or (f) when, in ordinary course, the envelope would have been delivered there. Contrast In re Farmers & Merchants Bank of Center, Mo., Mo.App., 83 S.W.2d 198, 199. See Wiggins v. Burkham, 77 U.S. (10 Wall.) 129, 19 L.Ed. 884, 886.

In some circumstances, it may be permissible for the finders of the facts to draw an inference, even though there be no direct evidence on the subject, as to whether mail matter properly addressed with postage prepaid would have been delivered within a given period of time,[3] par-

---

3. E.g., in McCaskey Register Co. v. Erffmeyer, Mo.App., 46 S.W.2d 256, 258(7), it was said that "[f]rom common knowledge and experience, the jury reasonably could find that a letter mailed at Weston, Mo., on July 16th, would reach Alliance, Ohio, by July 20th, in regular course." And in German-American Bank v. Cramery, 184 Mo.App. 481, 171 S.W. 31, 32, the appellate court thought that

ticularly where the sender and the addressee reside in the same city.[4] However, the general rule is that the time of receipt of mail in another city ordinarily cannot be presumed in the absence of any proof as to the usual course, time or frequency of the mails. 31A C.J.S., Evidence, § 136d, loc. cit. 298; 20 Am.Jur., Evidence, § 202, p. 202. And, in the noted circumstances of the case at bar, we are of the considered opinion that, with no evidence having been adduced as to any of the matters hereinbefore listed, the triers of the facts reasonably could not have inferred and found, and certainly we cannot know judicially, that the envelope (containing the money order) would, in due course of the mails, have been transmitted from the mail box at 35th and Prospect in Kansas City to Carthage in time to have been delivered to Rush on the following day, to wit, on Saturday, March 31, 1956.[5]

■ In this respect, we think that plaintiff failed to make a submissible case. But, regardless of whether the evidence would have permitted a finding that the money order had been mailed in time to have reached Rush in due course prior to expira-

tion of "the current term," i. e., prior to 12:01 A.M. on April 2, 1956, it is clear that the judgment for plaintiff could not stand anyway because his verdict-directing instruction 1 was prejudicially deficient and erroneous, in that it required no such finding. An instruction authorizing the jury to return a verdict must require the finding of all essential fact issues necessary to establish the legal proposition on which the right to the verdict is based.[6]

■ Furthermore, instruction 1 was erroneous in abstractly instructing the jury "that it is presumed that a letter properly addressed with postage prepaid, deposited in the United States mail reaches its addressee, and when there is evidence that such a letter was mailed but never received, the question of whether or not a letter was mailed and whether or not the said letter was received becomes one for you jurors to decide." In a civil case, it is improper to instruct as to any presumption where there is evidence on the subject. Nuckols v. Andrews Investment Co., Mo.App., 364 S.W.2d 128, 141(19), and cases there cited; Neve v. Reliance Insurance Co. of Philadelphia, Mo.App., 357 S.W.2d 247, 250–251,

it could "judicially notice" that a written notice mailed by plaintiff's counsel at Macon on February 5 "should have been in the hands of defendant's attorney" at Bowling Green, some 75 miles distant, "on the next day, the 6th, or * * * on the 7th, which would have been in time for the legal notice, with three days to spare." But in McCaskey Register Co. v. Redd, 145 Mo.App. 185, 187, 130 S.W. 109, 110, the opinion includes the statement that "we assume that a letter mailed at Dover, Mo., on the evening of the 16th of March, could not be received by plaintiff at Alliance, Ohio, during the business part of the day of the 17th," defendants not contending to the contrary.

4. In Rolla State Bank v. Pezoldt, 95 Mo.App. 404, 411, 69 S.W. 51, 53(5), it was held that the trial judge, sitting as a jury, "had the right to take judicial notice of the customary operations of the federal mail service, so far as to infer that defendant received the notice August

24th, the next day following that on which the notary mailed it to him in the same city," there being no denial of receipt.

5. Hoth v. Incorporated Village of Garden City, 26 Misc.2d 1064, 208 N.Y.S.2d 345, 347(2, 3); Starr v. Holck, 318 Mich. 452, 28 N.W.2d 289, 291(2), 172 A.L.R. 413; Chapman v. State, 129 Okl. 83, 263 P. 453, 454(2). See also Illinois Life Ins. Co. v. McKay, 6 Ga.App. 285, 64 S.E. 1131, 1133; McCaskey Register Co., supra, 145 Mo.App. loc. cit. 187, 130 S. W. loc. cit. 110.

6. Fitzpatrick v. Ford, Mo., 372 S.W.2d 844, 849(2); Myers v. Buchanan, Mo., 333 S.W.2d 18, 21; Gaffner v. Alexander, Mo., 331 S.W.2d 622, 627(3); Petty v. Huber, Mo.App., 360 S.W.2d 393, 394(1). See also State ex rel. Hartford Fire Ins. Co. v. Trimble, 298 Mo. 418, 424, 250 S.W. 393, 395; Koury v. Home Ins. Co. of New York, Mo.App., 57 S.W.2d 750, 751(2).

and cases there cited; Gibson v. Metropolitan Life Ins. Co., Mo.App., 147 S.W.2d 193, 198(7). Moreover, the so-called presumption of due receipt of mail matter is no more than a rebuttable presumption of fact [Gilbert v. Malan, 231 Mo.App. 469, 483, 100 S.W.2d 606, 615], *if* any "real presumption is meant to be predicated." 9 Wigmore on Evidence, § 2519, p. 430. It is both more appropriate and more accurate to say that evidence that mail matter has been properly addressed and mailed with postage prepaid permits, but does not require, the jury *to draw an inference of fact* that such mail matter was received by the addressee in due course. Williams v. Northeast Mut. Ins. Ass'n., Mo.App., 72 S.W.2d 166, 167; Morgan, Basic Problems of Evidence (1962), p. 31; 31A C.J.S., Evidence, § 136a, loc. cit. 291. If, upon retrial, plaintiff desires to instruct *(under our present system)* concerning the matter under discussion, it is suggested that the basic facts pertaining to the mailing should be hypothesized and that the jury then should be told that such facts (if found to be true) would permit a finding that the envelope (containing the money order) had been delivered to addressee Rush in due course of the mails. See the suggestions in Harke v. Haase, 335 Mo. 1104, 1110–1111, 75 S.W.2d 1001, 1004, concerning instructions in res ipsa loquitur cases.

▄▄▄ In the interest of minimizing the possibility of error upon retrial, we add these brief comments concerning defendant's contention that there was a complete failure of proof as to damages. The proper measure of damages in an action for injury to personalty is the difference between the *reasonable market value* of the personalty immediately before the accident and immediately thereafter.[7] The only testimony concerning damages came from plaintiff himself, and this was the only "question" specifically directed to the measure of damages: "The question was the difference in *value* of your automobile immediately before and immediately after the collision of April 5, 1956." Plaintiff answered: "Well, I'd say a thousand or fifteen hundred dollars." We are cognizant of the rule that the owner of personalty usually is permitted to testify as to its reasonable market value, although he may not have sufficient knowledge to qualify as an expert.[8] Even so, it obviously is better practice to develop in evidence such testimonial qualifications as the owner may have [e. g., Grath v. Wilson Motor Car Co., Mo.App., 253 S.W. 776, 777; Taylor v. St. Louis & H. R. Co., Mo.App., 256 S.W. 499, 500]; the evidence should be as to *reasonable market value* immediately before and immediately after the injury; and judicial liberality in permitting an owner of personalty to testify as to its reasonable market value should not be treated as an unrestricted license to engage in sheer speculation and unbridled guesswork. Instant plaintiff's answer smacks of that. Whether it should be treated as of no probative value is a question which we need not resolve. Suffice it to say that upon retrial plaintiff's evidence as to damages should be developed with the foregoing suggestions in mind.

▄▄▄ It being apparent that all pertinent factual information was not presented upon trial, substantial justice dictates that plaintiff should not be foreclosed from an op-

7.  Hall v. Clark, Mo., 298 S.W.2d 344, 350 (13); Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 533, 66 S.W.2d 903, 910(23); Wilson v. Motors Ins. Corp., Mo.App., 349 S.W.2d 250, 255(6); Wrinkle v. Imperial Casualty & Indemnity Co., Mo.App., 343 S.W.2d 90, 92; Thomson v. Bast, Mo.App., 309 S.W.2d 667, 670(5).

8.  State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68, 72(10); Hellums v. Randol, 225 Mo.App. 1092, 40 S.W.2d 500, 502(6); Finn v. Indemnity Co. of America, Mo.App., 297 S.W. 175, 176(1); Grath v. Wilson Motor Car Co., Mo.App., 253 S.W. 776, 777(2); Klein v. St. Louis Motor Car Co., Mo.App., 237 S.W. 848. See also State v. Brewer, Mo., 286 S.W.2d 782, 783(1); Keeton v. Sloan's Moving & Storage Co., Mo.App., 282 S.W.2d 194, 199(11); Baird v. Ellsworth Realty Co., Mo.App., 265 S.W.2d 770, 774(11).

portunity to prove his cause of action upon another trial. Kickham v. Carter, Mo., 314 S.W.2d 902, 907; Barnhart v. Ripka, Mo. App., 297 S.W.2d 787, 792(11); Hertel Electric Co. v. Gabriel, Mo.App., 292 S.W. 2d 95, 102(15). Accordingly, the judgment for plaintiff is set aside, and the cause is remanded for retrial.

RUARK, P. J., and HOGAN, J., concur.

(On Motion for Rehearing
or to Transfer)

PER CURIAM.

█ Plaintiff's motion for rehearing or to transfer was received and filed by our clerk on June 13, 1964, the *sixteenth* day after our opinion in this case had been filed and handed down on May 28, 1964. Among the "RULES RELATING TO ALL AP-PELLATE COURTS" in Part II of the Rules of Civil Procedure promulgated by our Supreme Court is Rule 83.16, V.A.M.R., pertaining to "Motions for Rehearing," which plainly imposes the mandatory time limitation that *a motion for rehearing "must be filed within fifteen days after the opinion of the court shall be filed."* (Emphasis ours) Both circuit and appellate courts are vested with broad discretionary power to extend time, in the interest of substantial justice, for the doing of many acts. But there are some time limitations which must be respected and observed and which may not be altered or waived by the courts. E. g., the time limitations for the filing of a *motion for new trial* [V.A.M.R. Rules 78.02 and 44.01(b); Fagan v. Hamilton Bank, Mo., 327 S.W.2d 201, 202(1, 2); Hoppe v. St. Louis Public Service Co., 361 Mo. 402, 404, 235 S.W.2d 347, 349(5), 23 A.L.R.2d 846; Robb v. Casteel, Mo.App., 340 S.W.2d 180, 183(1, 2)] and for the filing of a *notice of appeal*. V.A.M.R. Rules 82.04 and 82.07; Kattering v. Franz, 360 Mo. 854, 856, 231 S.W.2d 148, 149; Heard v. Frye, Mo.App., 319 S.W.2d 685, 686(2); Hance v. Johnson, Stephens & Shinkle Shoe Co., Mo.App., 306 S.W.2d 80, 82(2); Bank of Thayer v.

Kuebler, 240 Mo.App. 776, 781, 219 S.W.2d 297, 299. The fifteen-day time limitation on the filing of a *motion for rehearing* is cast in mandatory language, and neither counsel nor the court is at liberty to ignore or wink at that limitation. The order of this court should be and is that plaintiff's purported motion for rehearing or to transfer be stricken. Cf. Hoppe v. St. Louis Public Service Co., supra, 361 Mo. loc. cit. 404, 235 S.W.2d loc. cit. 349(5). However, in view of the "tear" and "temper" of that motion (to borrow the words of counsel), we have, ex gratia, examined it carefully and add the following comments.

In that motion, plaintiff (a) points out that his verdict-directing instruction 1 required a *general* finding that the "policy was in full force and effect at the time of the said collision and loss," i. e., on April 5, 1956, by which date the renewal premium should have reached Carthage "whether [transported] by train, highway post office, star route carrier, or saddled gopher," (b) suggests that, since April 1 was a Sunday and at 12:01 A.M. on April 2 "the company had no facility to accept premiums tendered in any fashion," receipt of the renewal premium at a later time would have constituted timely payment (although plaintiff avoids any definite statement on this subject, the import of his motion and supporting suggestions seems to be that receipt at any time prior to the loss on April 5 would have been timely), and (c) asserts that defendant did not preserve the point that instruction 1 was erroneous for failure to require a finding that the money order had been mailed in time to have reached Rush prior to expiration of "the current term" or, in other words, while the policy was still in force and effect.

*Of (a).* As stated in the original opinion, *plaintiff's trial theory was that there had been timely payment of the renewal premium on March 30, 1956, by the act of depositing the money order in the United States mails in Kansas City,* and nothing during trial either directed attention to the time when in due course the money order would have reached Rush or suggested that

such time of receipt was of any importance or significance. Against the backdrop of this trial theory, the evidence adduced thereon, and the *specific* finding required by instruction 1 "that on March 30, 1956 and before the expiration date of April 2, 1956 * * * plaintiff properly mailed the premium * * * of $40.84" in a postage prepaid envelope addressed to Rush and deposited in the United States mails in Kansas City, we are of the opinion that it could not be fairly and reasonably believed or assumed on this judicial review either (1) that a finding that the money order had been mailed in time to have reached Rush in due course prior to expiration of "the current term" (hereinafter referred to as a *time of receipt* finding) was an essential prerequisite to the quoted *general* finding, or (2) that a *time of receipt* finding was implicit in or encompassed by the quoted *general* finding. And this is particularly true in view of the further fact that, as we also have observed, there was no evidence which properly would have justified or permitted a *time of receipt* finding. Accordingly, that issue was neither submissible under the evidence nor submitted by instruction 1.

■■■ *Of (b).* In his petition, plaintiff alleged that, under the policy, the renewal premium of $40.84 "became due and owing not later than 12:01 A.M. on April 2, 1956" and that he had paid that amount to Rush "on or about the 30th day of March, 1956." Plaintiff's suggestion that, since April 1 was a Sunday, receipt of the renewal premium at a later time would have constituted timely payment comes to us for the first time in his unseasonable motion for rehearing or to transfer. This, no doubt, because under plaintiff's trial theory (i. e., that there had been timely payment of the renewal premium on March 30, 1956, by the act of depositing the money order in the United States mails in Kansas City) the time when in due course the renewal premium would have reached Rush would have been wholly meaningless and irrelevant. Nothing is better settled than that an appellate court

will review a case only upon the theory upon which it was tried [Olsten v. Susman, Mo., 362 S.W.2d 612, 614(3); Voelker v. St. Louis Mercantile Library Ass'n., Mo., 359 S.W.2d 689, 693(2); Welch v. McNeely, Mo., 269 S.W.2d 871, 875(2); Griffin v. Anderson, Mo.App., 369 S.W.2d 889, 892 (7)] and that a party will be held on appeal to his theory upon trial. King v. Guy, Mo.App., 297 S.W.2d 617, 625(16); Hill v. Seaboard Fire & Marine Ins. Co., Mo. App., 374 S.W.2d 606, 610(6); Greathouse v. Wolff, Mo.App., 360 S.W.2d 297, 301(2); Wardin v. Quinn, Mo.App., 324 S.W.2d 151, 154(3). We do not rule the legal validity of plaintiff's tardy suggestion, irrelevant to his trial theory and not presented or briefed by either party prior to submission here [cf. Thompson v. B & G Wrecking & Supply Co., Mo., 346 S.W.2d 65, 68], that, since April 1 was a Sunday, later receipt of the renewal premium would have constituted timely payment; and, of course, our disposition of this appeal is without prejudice to definitive embodiment of this suggestion, here unpleaded and amorphous, in an amended petition (if plaintiff be so advised) and to subsequent presentation of plaintiff's then theory to, and determination thereof by, the circuit court.

*Of (c).* Plaintiff's counsel are mistaken in their assertion that defendant did not preserve the point that instruction 1 was erroneous for failure to require a finding that the money order had been mailed in time to have reached Rush prior to expiration of "the current term" or, in other words, while the policy was still in force and effect. Among the numerous specific complaints leveled at instruction 1 in defendant's motion for new trial in the circuit court was the complaint that "instruction [1] is further erroneous in not requiring the jury to find that the alleged remittance [money order] reached the defendant while the insurance policy was still in force and effect, but directs the jury to find the verdict for the plaintiff if the renewal premium was mailed on March 30, 1956 and before the expiration date of April 2, 1956 thereby

predicating liability on the mere mailing of said remittance." Point III of the "points relied on" in defendant's appellate brief assigned reversible error in the giving of plaintiff's instruction 1 for the reason, among others, "that the instruction did not require the jury to find that the remittance reached the defendant while the insurance policy was still in force and effect." And the same complaint was carried forward into the "argument" section of the brief, first in the caption under which Point III was argued and again in this language in the body of the argument, to wit, "the instruction is further erroneous in not requiring the jury to find that the alleged remittance reached the defendant while the insurance policy was still in force and effect, etc." True, defendant's brief left us with the substantial burden of doing most of the legal research on this point, but that did not provide a rare, singular or unique experience for us.

If permitted to review plaintiff's motion for rehearing or to transfer on its merits, we would be constrained to overrule it; but, since it was not filed within the permitted time, our order is that the motion be stricken.